## CANDLAND v. OLDROYD et al.

No. 4413. Decided August 20, 1926. (248 P. 1101.)

1. SPECIFIC PERFORMANCE—REPLY TO OFFER TO SELL LAND ON EITHER OF TWO ALTERNATIVE ARRANGEMENTS, THAT OFFEREE ACCEPTED PROPOSITION, HELD NOT TO CONSTITUTE CONTRACT GOOD AS BASIS FOR SPECIFIC PERFORMANCE. Where landowner offered to sell land on either of two arrangements, and offeree replied that he accepted proposition, there was no contract sufficient as basis of suit for specific performance.

2. CONTRACTS—FOR PARTIES TO CONTRACT, THERE MUST BE DEFINITE UNDERSTANDING AND UNEQUIVOCAL MEETING OF MINDS ON TERMS OF CONTRACT. For parties to contract, there must be definite and unequivocal meeting of minds on terms of contract, and if there is any uncertainty or indefiniteness, or future negotiations or considerations to be had, there is no completed contract.

3. CONTRACTS. Offer to do certain thing or sell particular article, accepted by offeree, is completed contract, binding on parties; but offer and acceptance must agree throughout.

4. CONTRACTS. Contract, to be binding one one party, must also be binding on other.

5. SPECIFIC PERFORMANCE. If one party to contract has right to insist on specific performance, other party thereto must have some right.

Appeal from District Court, Seventh District, Sanpete County; *Dilworth Wooley,* Judge.

Suit by A. C. Candland against Clarence A. Oldroyd and another. From a judgment for plaintiff, defendants appeal.

REVERSED and REMANDED, with directions.

Corpus Juris-Cyc. References:

[1] Specific Performances 36 Cyc. p. 588 n. 76.

[2] Contracts 13 C. J. p. 264 n. 81; p. 266 n. 6; p. 290 n. 10, 11.

[3] Contracts 13 C. J. p. 279 n. 13.

[4, 5] Contracts 13 C. J. p. 331 n. 18; Specific Performances 36 Cyc. p. 622 n. 19.

*A. H. Christenson,* of Provo, for appellants.

*S. S. Atkin,* of Mt. Pleasant, for respondent.

GIDEON, C. J.

This is an action for specific performance of an alleged contract for the sale of real estate. Plaintiff (respondent) had judgment in the court below, and the defendants appeal.

It is conceded that prior to January 13, 1925, Oldroyd was the owner of certain farm lands in Sanpete county, this state. It appears without dispute that he had been negotiating with respondent for the sale of this land for more than one year prior to January, 1925. Negotiations had also been had with others looking to the sale of the farm. Oldroyd and respondent had made each other counterpropositions for the sale and purchase of the land, and had correspondence respecting the same. On January 13, 1925, Oldroyd addressed the following communication to Candland:

"I have considered your proposition, and will say I cannot sell on the terms you offered. I will sell for $1,300 cash down, or I will sell for $1,400 on these terms: $150 down; $450 June 1, 1925; $400 November 1, 1925; $400 June 1, 1926. I will want 7 per cent interest. Kindly answer at once in regard to this, as I have another party considering it."

On January 17, 1925, respondent, in reply, addressed the following letter to Oldroyd:

"Yours of the 13th received, and I note what you say. We have been parleying so long on this deal we had better get it closed up, so come over as soon as you can and we'll fix it up, I hope, satisfactory to both. While I am accepting your proposition at this time, I feel sure you will be considerate in the final arrangements."

On January 23d Oldroyd wrote upon a postal card and addressed the same to respondent the following:

"I received your letter. I would have come over today but am sick abed. I will be over Monday or Tuesday."

On January 24th the respondent addressed a postal card to Oldroyd, on the reverse side of which was written the following:

"Just received your card and hasten to reply so you will get this tomorrow before starting over here. I am going to run down home for Sunday, and stay all week to leadership, and when I get back I'll write or phone you."

On the 29th of January, 1925, Oldroyd wrote Candland as follows:

"I went over to Mt. Pleasant last Monday and looked for you, and after a time found you had gone to Provo. I had to have some money, and I sold the dry farm. After I got home Monday night I received your card, but it was too late."

Whatever contract, if there was a contract, for the sale of the land, is indicated in the letter of Oldroyd under date of **January 13, 1925,** and the answer of Candland under date of January 17th. Both letters are quoted above. At the conclusion of respondent's testimony the appellants jointly moved the court for a nonsuit, basing their motion upon the claim that respondent had failed to make out a case that would justify the court in granting specific performance. The court denied the motion, and the ruling in that regard is assigned as error.

The letter of January 13, 1925, is definite and specific in its terms in offering the respondent one of two alternatives; either to buy the property for cash or to buy it on terms, payments to be made covering a period of approximately eighteen months. The letter relied upon as an acceptance of the offer to sell, and therefore a completed contract, says:

"While I am accepting your proposition at this time I feel sure you will be considerate in the final arrangements."

It is elementary that, in order for parties to contract, there must be a definite, understandable, and unequivocal meeting of the minds upon the terms of the contract; that is to say, each party must agree without reservation to what he is required to do and to what the other party is required and expected to do. So long as there is any uncertainty or indefiniteness, or future negotiations or considerations to be had between the parties, there is not a completed contract. In fact, there is no contract at all. This general rule is accepted by all courts and text-writers, and it is useless to cite authorities to support it.

It is a recognized principle or rule of contracts that an offer to do a certain thing or sell a particular article, conveyed to another by letter, with the offer accepted by the one to whom the offer is addressed, such offer and acceptance is a completed contract and one binding upon the parties. In order for there to be a completed contract by offer made by letter and acceptance, the acceptance must agree wholly with the offer made. As expressed by the court in *Potts* v. *Whitehead*, 23 N. J. Eq. 514:

"An acceptance, to be good, must of course be such as to conclude an agreement or contract between the parties. And to do this it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand."

The offer made by appellant Oldroyd to respondent Candland was in the alternative. The respondent could have accepted either, and, if he had done so, in our judgment, there would have been a completed contract. Whether the terms of that contract as indicated in the correspondence were so definite and complete that a court of equity could decree specific performance we need not now determine. The respondent did not accept either of the offers made. He simply stated that he accepted "your proposition." How could Oldroyd, or how could any one, determine that Candland accepted to buy for cash, or that he proposed to buy

on payments to be made at stated times? How could Oldroyd determine, on receipt of Candland's communication of January 17th, whether he had sold his farm for cash or on time? We do not see how it can be said with any degree of certainty from the writings—and the rights of these parties must be determined from these writings—that the minds of the parties ever met on a sale for $1,300 in cash or on a sale for $1,400 on time. There is nothing in the letter of respondent Candland, save the statement that he accepts "your proposition," indicating which of the offers he had accepted. It may be seriously doubted whether the terms specified in the writing were sufficiently definite to authorize a court in granting specific performance, even if we were of the opinion that the correspondence constitutes a completed contract. In section 106, 1 Page on Contracts, it is said:

"In order to be the basis of a decree of specific performance in equity, the contract must be so certain that the chancellor's decree can specify exactly what must be done in order to comply therewith. A lack of certainty as to the length of time that the contract is to remain in force, or as to the method of securing obligations for deferred payments, prevents specific performance."

It is argued by counsel for respondent, as we understand the argument, that respondent had an election or option to insist upon the fulfillment of either of the offers of sale contained in the letter of January 13th. The respondent's right to insist must be founded upon some expression or intimation on his part that he had accepted one or the other of the offers made by Oldroyd. As we interpret the letter of respondent, he did not elect either of the offers contained in Oldroyd's letter of January 13th. The weakness of respondent's position is that the facts do not show that he had indicated which offer he proposed to insist upon or which offer he had accepted.

Let us assume that Candland had refused to go forward and purchase the property, and that Oldroyd had instituted an action for specific performance and had alleged that the

offer had been made and accepted in the language found in the letters. Upon what theory could he have enforced specific performance? Would it have been upon the theory that Candland was to buy for cash or upon time? Whatever right Oldroyd might have had in an action of that nature must and would have been adjudged and determined from the writing found in the two letters. In what way could he have proven that respondent had elected to contract either for a cash payment or on time?

A contract to be binding upon one must likewise be binding upon the other. If one party has a right to insist upon specific performance, the other party to the contract must likewise have the same right. Tested by the elementary considerations that enter into every contract, we are unable to conclude that any contract existed growing out of this correspondence.        4, 5

It becomes unnecessary to consider the other questions discussed in the briefs of counsel, going to the right of respondent to have specific performance, provided the court was of opinion that the correspondence constituted and was a completed contract. The respondent bases his right to specific performance exclusively upon the correspondence had between him and Oldroyd. There was no other evidence in the record upon which respondent could base any claim for specific performance. Holding, as we do, that the letters did not constitute a contract which would authorize the court to decree specific performance, there is apparently no reason why a new trial should be ordered. The judgment of the court below is reversed, and the cause is remanded to the district court of Sanpete county, with directions to dismiss the complaint. Appellants to recover costs.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.