John M. RAPP, dba Rapp Construction Company, Plaintiff and Appellant,

v.

SALT LAKE CITY, a municipal corporation, and Marriott Corporation, a corporation, Defendants and Respondents.

No. 13552.

Supreme Court of Utah.

Oct. 22, 1974.

Bryce E. Roe, of Roe & Fowler, Salt Lake City, for plaintiff-appellant.

Jack L. Crellin, Salt Lake City Atty., O. Wallace Earl, Deputy City Atty., Jean L. W. Barnard (for Marriott), of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendants-respondents.

CALLISTER, Chief Justice:

Plaintiff initiated this action to recover the expenses he incurred in preparing and submitting a bid to construct a building at the Salt Lake City International Airport. Defendant, Marriott, filed a motion to dismiss on the ground that plaintiff's pleading failed to state a claim upon which relief could be granted, Rule 12(b)(6), U.R.C.P.; the trial court granted this motion. De-fendant Salt Lake City, following its responsive pleading, filed a motion for summary judgment, which the trial court granted. Plaintiff appeals therefrom.

On November 30, 1972, Salt Lake City entered into a lease and concession agreement with Airline Foods, Inc., a subsidiary of the Marriott Corporation, which guaranteed performance of the agreement. Airline Foods leased certain real property at the International Airport from Salt Lake City to operate an in-flight catering kitchen. The agreement provided that the City would construct, at its expense, a building in accordance with the plans and specifications prepared by the lessee (Airline Foods). The agreement specified that the City would pay for the cost of the project, provided that in the event the total sum exceeded $550,000, Airline Foods would promptly pay the City the excess. Another provision permitted Marriott Corporation, the guarantor of the agreement, the right to bid on all or any portion of the construction work.

In May, 1973, Salt Lake City, by means of a notice mailed to two contractor's associations and publication in a newspaper of general circulation, invited bids for the work of constructing the building at the airport for the in-flight kitchen. According to plaintiff's pleading, this invitation to bid was at the instance and request of Marriott Corporation, and that Salt Lake City by so inviting the bids represented and warranted to the bidders that the contract would be awarded on the basis of competitive bidding and that all would compete on an equal basis. Plaintiff, in reliance on such representation and warranty, incurred great expense and expended effort to prepare and submit a bid. Plaintiff's bid was in the amount of $648,888; the preliminary estimate by the City was $650,000. J. J. G. Construction Company, which plaintiff alleged was a wholly owned subsidiary of defendant Marriott, submitted a bid of $540,000. Plaintiff averred that the bid of J. J. G. was not based upon any estimated cost of construction but solely upon the contrac-

tual liability of Airline Foods under the lease. Plaintiff alleged that the City failed to disclose to the bidders that a competitive advantage had theretofore been granted to Marriott Corporation and its subsidiaries by virtue of the lease agreement.

On June 11, 1973, over the protest of plaintiff, the Board of Commissioners of the City approved the award of the contract to the lowest bidder J. J. G. Construction. Plaintiff alleged that the action of the City was not taken in good faith but for the purpose of creating an appearance of competition in the bidding. Plaintiff alleged that by virtue of the actions of defendants, he had been damaged in the amount of $6,488.88, the costs involved in preparation of the bid. Plaintiff alleged that this claim, arising out of the misrepresentation and breach of warranty, was duly presented to the City and was denied. Based on the foregoing, plaintiff demanded judgment against defendants, jointly and severally.

Salt Lake City pleaded that it was a municipality, that the activities alleged by plaintiff were engaged in by the City in the exercise and discharge of a governmental function, that the Governmental Immunity Act, Section 63–30–1 et seq., U.C.A.1953, as amended 1965, did not provide for waiver of immunity for damages sustained by misrepresentation and breach of warranty; and, therefore, the City was immune from suit.

On appeal, plaintiff contends that a municipality in advertising for bids warrants that the bids are sought in good faith and for a public purpose; and if the bidding procedure is tainted, the public body is liable for expenses incurred in preparing the bid. Plaintiff predicates his claim on a theory advanced and subsequently followed by the Court of Claims in Heyer Products Company v. United States.[1] The court conceded that an advertisement for bids was a request for offers, and no contract resulted until an offer was accepted.

Therefore, an unsuccessful bidder could not recover the profits he would have made under the contract, because he had no contract. The court was of the opinion that the government knew that considerable expense would be involved in complying with the invitation to bid and therefore implied a promise on its part to give fair and impartial consideration to the bids, confining its consideration solely to the interests of the government and not to the interest of some favorite bidder. If the government breaches this implied promise, the injured party is entitled to recover his expenses.

The court stated that if the facts as alleged by the plaintiff were true, the government had shamefully broken its implied promise, since it knew from the beginning that it intended to award the contract to a favored party. The court explained:[2]

. . . The advertisement for bids was a sham, done only to appear to comply with the law, to clothe their apparently dishonest purpose with the habiliments of legality. If these allegations are true, they practiced a fraud on plaintiff and on all other innocent bidders. They induced them to spend their money to prepare their bids on the false representation that their bids would be honestly considered.

This implied contract has been broken, and plaintiff may maintain an action for damages for breach.

. . . . . .

It goes without saying that not every unsuccessful bidder is entitled to recover the cost of putting in his bid. Recovery can be had in only those cases where it can be shown by clear and convincing proof that there has been a fraudulent inducment for bids, with the intention, before the bids were invited or later conceived, to disregard them all except the ones from bidders to one of whom it was intended to let the contract, whether he

1. 140 F.Supp. 409, 135 Ct.Cl. 63 (1956); 177 F.Supp. 251, 147 Ct.Cl. 256 (1959).

2. Pp. 413–414 of 140 F.Supp.

was the lowest responsible bidder or not. . . .

Based on the foregoing, plaintiff contends that he had a collateral implied in fact contract, which was breached and that under Section 63–30–5, U.C.A.1953, as amended 1965, immunity from suit of all governmental entities is waived as to any contractual obligation. Plaintiff urges that in a bidding situation two distinct contracts are involved. Under the first contract, since the governmental entity might reject all bids, the solicitation of bids is not a promise to accept the lowest or best bid; plaintiff concedes that the bid is a mere offer which must be accepted and all statutory formalities fulfilled prior to the existence of a binding contract. He insists that there is a second, collateral contract under which the government by soliciting bids impliedly promises to give fair consideration to all of the competitive bids and this promise is supported by the time, effort, and expense in so preparing the bid.

In Rasmussen v. United States Steel Company.[3] This court explained:

. . . the distinction between express and implied in fact contracts largely is a difference only in mode of expression. A contract is express or implied by reason of the expression of offer and acceptance,—whether there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain. The elements are basically identical in both cases, although the evidentiary facts may be expressed differently.

.    .    .    .    .    .

May the invitation of the City to bid and plaintiff's response be reasonably interpreted as a manifestation of mutual assent to make a bargain, the terms of which may be ascertained?

An ordinary advertisement for a bid is not itself an offer, rather the bid or the tender is an offer which creates no right until accepted. Particularly in the case of public contracts, the requirement of certain formalities by law, such as a written contract, indicates that even after acceptance of the bid, there is no contract until there has been compliance with the requisite formalities.[4]

To create a binding contractual obligation with the City, there must be compliance with Section 24–1–15 and Section 25–16–6, of the Revised Ordinances of Salt Lake City. The former ordinance provides that no liability in excess of $150 shall be created against the City by the commissioner of any statutory department without the sanction of the board of commissioners being first had and obtained. The latter ordinance reflects the statutory mandate of Section 10–10–61, U.C.A.1953, as amended 1961, that the City Recorder shall countersign all contracts made on behalf of the City, and every contract made in behalf of the City or to which the City is a party shall be *void* unless signed by the recorder. (Emphasis added.)

The invitation to bid by the City may not be interpreted as an offer for a binding contract; this action and plaintiff's response may not be reasonably construed as a manifestation of mutual assent indicating an intention of the parties to be bound by a contract, the terms of which were certain. Additionally, plaintiff's theory must fail since no contractual liability can be created without compliance with the previously cited ordinances.[5]

In effect, plaintiff's argument on appeal is directed towards enforcing a quasi contractual obligation, which is imposed by the law for the purpose of bringing about justice without reference to the intention of the parties. Such obligations are not true contracts but are based on unjust enrichment or restitution.[6] The prom-

3. 1 Utah 2d 291, 294–295, 265 P.2d 1002, (1954).

4. 1 Williston On Contracts (3rd Ed.) Sec. 31, pp. 82–84.

5. Thatcher Chemical Co. v. Salt Lake City Corp., 21 Utah 2d 355, 445 P.2d 769 (1968).

6. 1 Williston On Contracts (3rd Ed.) Sec. 3, pp. 9–15.

ise is purely fictitious and is implied in order to fit the actual cause of action to the remedy. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. Where the facts indicate a duty of the defendant to pay, the law imputes to him a promise to fulfill that obligation.[7] In states distinguishing actions of contract from actions of tort, a proceeding at law for restitution is an action of contract.[8] Thus again, plaintiff encounters the statutory requirements which mandate his contractual obligation is void without fulfillment of the requisite formalities.

There is one other aspect which must be considered.

> . . . As the law may impose any obligation that justice requires, the only limit in the last analysis to the category of quasi contracts is that the obligation in question more closely resemble those created by contract than those created by tort. . . .[9]

A review of plaintiff's complaint compels a conclusion that it is a tort action, alleging deceit.

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation.[10]

The defendant, City, asserted its immunity to such an action, Sections 63–30–3 and 63–30–10(2), (6), U.C.A.1953, as amended 1965.[11] The trial court did not err in rendering judgment to the defendants.

We concur: HENRIOD, ELLETT, CROCKETT and TUCKETT, JJ., concur.

---

7. 66 Am.Jur.2d, Restitution and Implied Contracts, Sec. 2, pp. 943–944.

8. Restatement, Restitution, Sec. 5(b).

9. 1 Williston On Contracts (3rd Ed.) Sec. 3, p. 13.

10. Restatement, Torts, Sec. 525.

---

11. The fact should not be overlooked that the defendants brought to the attention of the court that the Airline Foods lease had been filed with the City Recorder, in accordance with Sec. 10–10–61, U.C.A.1953, as amended 1961, thus imparting constructive notice of its provisions to plaintiff.