### SCANWELL LABORATORIES, INC., Appellant,

### v.

### David D. THOMAS, Acting Administrator of the Federal Aviation Administration, et al.

### No. 73–1796.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1975.

Decided Oct. 23, 1975.

---

107. *George Koch Sons, Inc. v. NLRB*, 490 F.2d 323, 327 (4th Cir. 1973).

108. 386 U.S. at 644, 87 S.Ct. 1250.

John M. Calimafde, New York City, with whom Paul H. Blaustein, Washington, D. C., was on the brief for appellant.

Barbara L. Herwig, Atty., Dept. of Justice, with whom Carla A. Hills, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Stephen F. Eilperin, Atty., Dept. of Justice, were on the brief for appellee Administrator of the Federal Aviation Administration.

David V. Anthony, Washington, D. C., for appellee, Cutler-Hammer, Inc.

Before LEVENTHAL and ROBINSON, Circuit Judges, and DAVIS,* Judge, United States Court of Claims.

DAVIS, Judge:

■ This is the latest round in a government bid protest which has been in the courts since 1969 when the Federal Aviation Administration awarded, over the objection of plaintiff-appellant Scanwell Laboratories, Inc. (Scanwell), a contract to the Airborne Instrument Laboratory (AIL), a division of defendant Cutler-Hammer, Inc., to construct and install ten Instrument Landing Systems (ILS). Plaintiff's original complaint asked that the court declare the award to AIL illegal, set it aside, and enjoin AIL from working on the contract. The District Court dismissed the suit on the ground that a disappointed bidder lacked standing to protest in court the award of the contract to another. This court reversed, finding that Scanwell had standing to bring the suit. *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). However, no injunction was issued by the District Court on remand, and AIL proceeded to complete work on the contract. The defendants (the Government and Cutler-Hammer) then moved to dismiss the complaint as moot (on the ground that by then the contract had been performed). This was denied by the District Court but Scanwell was granted permission to file an amended complaint. The new complaint alleged that the federal defendants had acted tortiously and in violation of an implied contract in improperly awarding the contract to AIL and that Cutler-Hammer had received the contract through unfair competition and in violation of the Sherman Act, and asked for damages against both defendants. The District Court has transferred the contract claim against the federal defendants to the Court of Claims, 28 U.S.C. § 1406(c), and on plaintiff's own motion has dismissed the antitrust count against Cutler-Hammer.[1] Neither of these actions has been appealed. Instead, the case is before us again on review of the lower court's dismissal of the tort claims against both the Government[2] and Cutler-Hammer for failure to state a claim on which relief can be granted.[3]

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. At first the District Court left count 4, the anti-trust action against Cutler-Hammer, outstanding even though it transferred or dismissed the other counts. In their brief the federal appellees raised the point that this court lacks jurisdiction over the appeal of the dismissed counts because the orders appealed from are not final orders (retaining count 4 in the district court) and the lower court made no express determination under F.R.C.P. Rule 54(b) that there is no just reason for delay and likewise made no express direction for the entry of judgment. Nor did the district court certify the dismissed counts for interlocutory appeal under 28 U.S.C. § 1292(b). After the Government had presented this issue of appealability, plaintiff-appellant voluntarily dismissed the anti-trust count (count 4). As of the present, therefore, all of the claims in the amended complaint have been disposed of by or in the district court, and there is no question that the appeal is properly here.

2. While David D. Thomas, the Acting Administrator of the Federal Aviation Administration, remains a named defendant, Scanwell does not request damages personally against him. As the court below noted at an earlier stage in the case, "[r]egardless of how the caption in this case reads, the Government has always been and is now the real defendant." Memorandum at 3, C.A. No. 508–69, filed April 21, 1972.

3. Just prior to oral argument, both defendants filed motions to require the plaintiff to identify the real party in interest under F.R.C.P. Rule 17(a), contending that Scanwell, which is in bankruptcy, had assigned its claim to its counsel. In addition, the federal defendants filed a motion to dismiss the appeal on the basis that the assignment was made without the consent of the United States, that it was invalid under the Assignment of Claims Act, 31 U.S.C. § 203 (1970), and that therefore there was no real party in interest eligible to pursue the claim. Scanwell's counsel, by affidavit, has informed us that the claim, with the approval of the bankruptcy court, has been transferred back to Scanwell, which is the real party in interest.

## I.

Only a brief recapitulation of the facts is needed. In early 1969, in response to a number of air disasters, the Federal Aviation Administration (FAA) sought quickly to equip ten small airports with systems to automatically guide a plane from 200 feet away along a predetermined path to a landing strip. Each system consisted of 4 separate and distinct parts—the glide slope, the localizer and two markers. The invitation for bids (IFB) stated that time was of the essence, that bids were to be opened fifteen days after the IFB was issued, and the systems were to be delivered starting 210 days after the execution of the contract. In order to assure that working systems would be delivered on time, the IFB stated:

> To be responsive to this request, the contractor shall submit evidence that an identical equipment complement as that proposed for this procurement has previously been installed in at least one location and has achieved at least Category I performance as certified by an FAA Flight Check (or another ICAO country's flight inspection).

IFB's were sent to both Scanwell and AIL (as well as others), and both bid on the contract.

There were four bidders: one failed to include a flight check at all and the bid was determined to be unresponsive; two—Scanwell and IT&T—submitted flight checks literally within the terms of the IFB; and AIL offered evidence that it had received certification of all parts of the system, but at two different locations. AIL was the low bidder at $65,720 per system, with Scanwell second at $92,497 (per system).

When the FAA announced that it would consider AIL's bid and award the contract to that company, Scanwell filed protests with both the FAA and the General Accounting Office, stating that the IFB clearly required certification of the entire system at one location and that procurement regulations forbade waiver of that requirement. Upon denial of the protest to the FAA, Scanwell filed its original complaint in the district court. While the appeal of the dismissal of the original action was pending, and after the contract had been awarded, GAO also denied the protest, holding that it was unclear whether the IFB certification requirements were really directed to responsiveness of the bid, rather than responsibility of the bidder (as to which FAA discretion was more substantial),[4] that no bidder had been prejudiced by the vagueness, and the award to AIL could stand.

■ Plaintiff's claim against the Government is based on the theory that the AIL bid, with its dual location certification, was not responsive to the IFB, and therefore that the FAA violated its procurement regulations in awarding the contract to AIL. The relevant regulation states: "To be considered for award, a bid must comply in all material respects with the invitation for bids so that, both as to the method and timeliness of submission and as to the substance of any resulting contract, all bidders may stand on an equal footing and the integrity of the formal advertising system may be maintained." 41 C.F.R. § 1–2.301(a) (1974). The Government, on the other hand, justified its conduct on the basis of another regulation stating that minor informalities or irregularities

This satisfied the requirement that the real party in interest be identified as well as the rule of the Assignment of Claims Act, since the purposes of that statute—that the United States be able to deal with one claimant only, and that there be no trafficking in claims against the Government, see *Patterson v. United States,* 354 F.2d 327, 329, 173 Ct.Cl. 819, 822–23 (1965)—have been served by the retransfer to the original claimant. In these cir-

cumstances, the defendants' motions are granted and are deemed to have been complied with by appellant.

4. The "well-established distinction between the responsibility of the bidder and the responsiveness of the bid" is fully discussed in *Northeast Construction Co. v. Romney,* 157 U.S.App.D.C. 381, 485 F.2d 752, 759–60 (1973).

may be ignored. 41 C.F.R. § 1–2.405 (1974). In addition, the GAO ruling supporting the award suggests that the IFB certification demands may in fact have been merely experience requirements, which measure responsibility of the bidder not responsiveness of the bid, and that therefore AIL's failure to meet the letter of the IFB does not disqualify it under the regulation cited by Scanwell.[5]

## II.

■■ The purpose and interaction of these regulations and theories have been discussed fully in our prior opinion, and we do not depart at all from our decision, stated there, that they create a duty on the part of government procurement officials which runs to bidders as well as to the public. 424 F.2d at 864–65. It is quite possible that Scanwell's interpretation of the IFB and the regulations is correct, and that the FAA abused its discretion in interpreting them improperly. However, *monetary* recovery against the Government is not, as plaintiff suggests, an automatic consequence of the existence of these factors.

Scanwell alleges that "The action of FAA in waiving the explicit requirements of the bid and in accepting the AIL bid and awarding said illegal contract to AIL constituted wrongful arbitrary and capricious misconduct, and not in accordance with law." Later documents, coupled with a jurisdictional allegation that the action comes within 28 U.S.C. § 1346(b) (the Federal Tort Claims Act), inform us that the pleadings now before us are meant to state a tort. But the problem is whether this part of the complaint has set forth a claim as to which the United States has consented to be sued under the Tort Claims Act. If the claim falls outside the Act completely or within one of the exceptions-to-liability embodied in the statute, the District Court was of course entirely correct in dismissing the action.

It is therefore initially appropriate to touch upon the question whether Scanwell's complaint can properly sound in tort at all. The Court of Claims, in considering actions by disappointed bidders for bid preparation costs, has decided that such suits are founded in an implied contract between the Government and its bidders under which the Government agrees to consider each bid fairly and honestly in return for the bidder's submission of an eligible bid. *See Heyer Products Co. v. United States*, 140 F.Supp. 409, 412–13, 135 Ct.Cl. 63, 69 (1956); *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1237, 192 Ct.Cl. 773, 780 (1970); *McCarty Corp. v. United States*, 499 F.2d 633, 637, 204 Ct.Cl. 768, 775 (1974).[6] This conclusion has also been reached by the Ninth Circuit in the recent case of *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 403 (9th Cir. 1975), where the court awarded bid preparation damages of $9,414 under the court's Tucker Act jurisdiction, and denied recovery under the Tort Claims Act. On the other hand, one district court which considered the issue, as well as the Utah Supreme Court in a parallel

---

**5.** The General Accounting Office, a branch of the Congress rather than the executive, provides a non-judicial forum for review of contract awards through its Bid Protest Procedures, 4 C.F.R. Part 20 (1975). The procedure is informal and not required as a prerequisite to judicial review. *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859, 875–76 (1970). However, the agency does consider almost 1000 bid protests a year, and has developed an expertise in the area. *See Wheelabrator Corp. v. Chafee*, 147 U.S.App. D.C. 238, 455 F.2d 1306, 1313–17 (1971).

**6.** In decisions since *Heyer Products*, most notably in *Keco Industries, Inc. v. United States*,

492 F.2d 1200, 203 Ct.Cl. 566 (1974), the Court of Claims has developed standards under which a disappointed bidder may recover bid preparation costs. The court has consistently, however, denied recovery of lost profits. *See McCarty Corp. v. United States, supra* at 637, 204 Ct.Cl. at 774–75.

The GAO has recently joined the Court of Claims in providing for the recovery of bid preparation costs where "there was no reasonable basis for the agency's decision" not to award the contract to the claimant. *T & H Co.*, —— Comp.Gen. ——, 586 *Fed. Contracts Rpt.* E–1 (June 9, 1975).

case, have found that a claim such as this sounds in tort. *Edelman v. Federal Housing Administration*, 251 F.Supp. 715, 719 & n. 7 (E.D.N.Y.1966), aff'd, 382 F.2d 594 (2d Cir. 1967); *Rapp v. Salt Lake City*, 527 P.2d 651, 655 (Utah 1974).

As Scanwell has not objected to the transfer of the contract count to the Court of Claims, there is no need for us to decide whether that court's theory of implied contract is correct. It is apparent that this case lies in that region of uncertainty between contract and tort which under the old common law forms of action would have allowed (indeed, forced) the plaintiff to choose the theory of his action. *See Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir. 1963). While modern pleading rules have generally done away with this archaic problem, the limited scope of United States consent to suit requires a court to face it when the Government is the defendant in a suit for damages. *See Hill v. United States*, 149 U.S. 593, 598, 13 S.Ct. 1011, 37 L.Ed. 862 (1893). Our solution need not, however, be to limit the plaintiff's claim to one theory or the other, but merely to prevent a double recovery, if indeed recovery is possible under either theory. *Cf.* F.R.C.P. Rule 8(e)(2).

▪ In traditional torts terminology Scanwell's claim is that (1) the Government, by the IFB and the regulations incorporated therein by implication, *G. L. Christian and Associates v. United States*, 312 F.2d 418, 424, 160 Ct.Cl. 1, 12, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), induced plaintiff to prepare a bid in reliance that the bid would be considered as set out in the IFB and regulations, and (2) that, after plaintiff had spent a considerable sum in preparing the bid, the Government refused to act in the manner in which it had represented it would act, causing

Scanwell to lose both the money spent in preparation of its bid and prospective contract profits. To the extent that this states a tort at all,[7] it appears to be a claim for negligent misrepresentation of defendant's intentions. *See* 1 *F. Harper & F. James, The Law of Torts*, §§ 7.6, 7.10 (1956). (Plaintiff makes no allegation that the FAA, as opposed to Cutler-Hammer, acted with any sort of intent to harm Scanwell). What appellant says, in effect, is that the Government, in good faith but incorrectly, caused it to act in reliance on the FAA's promise that it would abide by the terms of the IFB and regulations.

▪ While the Tort Claims Act is an abrogation of sovereign immunity to be liberally read when applicable, the retention of immunity in the act's exceptions must also be respected. *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Those exceptions, codified at 28 U.S.C. § 2680, include the following:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> \* \* \* \* \* \*
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. . . .

---

**7.** The Tort Claims Act requires that we apply, in determining whether the United States is liable to plaintiff, "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1970), *see May Department Stores Co. v. Devercelli*, 314 A.2d 767, 770 (D.C.App. 1973). The actions complained of here took place at the Federal Aviation Administration offices in Washington, D. C., and it is District of Columbia law which controls substantively. We have been unable to find any District of Columbia case which allows recovery for negligent misrepresentation.

28 U.S.C. § 2680(h)(1970), as amended by P.L. 93–253, § 2, 88 Stat. 50 (1974). In passing on the scope of this exception, the Supreme Court has unequivocally stated "that § 2680(h) comprehends claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961). Scanwell's claim therefore falls within one of the exceptions to government liability of the Tort Claims Act, and was properly dismissed by the district court against the government defendants.[8]

 But even if the tort stated in the complaint is not one of the substantive delicts excepted from coverage by 28 U.S.C. § 2680(h), the so-called "discretionary exception" (28 U.S.C. § 2680(a)) controls. That provision excludes any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*" (emphasis added). It cannot be gainsaid that the FAA had to make some relatively high-level choices. It had to decide whether the waived requirements in AIL's bid were, on the one hand, minor irregularities or mere differences in responsibility of the bidders, or, on the other, were essential requirements of responsiveness of the bid. It had to decide, in addition, whether to set aside all bids and to readvertise. Perhaps the agency's actual choice amounted to an abuse of discretion which could be set aside in an injunctive or declaratory action, but we think there is no doubt that there was in fact some significant degree of choice and the contracting officer's obligation was not purely ministerial. When this court said in the earlier appeal (424 F.2d at 873) that on the merits the trial court could possibly find that "there is no discretion to ignore the regulations regarding responsiveness of bids" it meant that it could well be an abuse of discretion to ignore the regulations regarding responsiveness of bids. The court was speaking in terms of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), not the Tort Claims Act. *See especially* 424 F.2d at 874. Under the former statute, it is clear that agency action is reviewable (by injunction, mandamus or declaratory judgment) for abuse of discretion (5 U.S.C. § 706(2)(A)), but under the latter even a gross abuse of discretion will not predicate an award of tort damages. The Administrative Procedure Act, by itself, is not a waiver of sovereign immunity in suits seeking money damages against the United States. *Warner v. Cox*, 487 F.2d 1301, 1304–05 (5th Cir. 1974); *International Engineering Co. v. Richardson*, 167 U.S. App.D.C. 396, 512 F.2d 573, 580–81 (1975). The limits of that type of consent to suit are normally found (except in admiralty cases) in the Tucker Act and the Tort Claims Act.

### III.

In its complaint against Cutler-Hammer, Scanwell charges that defendant with "unfair competition and unjust enrichment." Specifically, appellant alleges that, by a policy of hiring highranking FAA employees, Cutler-Hammer had gained "undue and unfair influence with the FAA" to the detriment of plaintiff, that AIL had bid a low price (lower than the bid or cost of other bidders) in order to gain a favored position in the current and future contract awards, and that all these actions were taken with "the intention of damaging or destroying Plaintiff as a competitor in the field of ILS."

 Scanwell's first claim—relating to the hiring away of FAA employees—was effectively denied by Cutler-Hammer's answers to interrogatories, made under oath and filed concurrently with the motion to dismiss. Appellee there stated that AIL had hired only one former FAA employee, who left the agency three years before the IFB for

---

**8.** Our earlier decision was directed only to the issue of standing, and explicitly did not decide whether Scanwell could recover or prevail on its allegations. 424 F.2d at 873.

ILS was issued and who was, by 1972, no longer employed by AIL. While Scanwell briefly protested the adequacy of AIL's response, it never filed a motion (as it did with respect to the federal defendants' answers to interrogatories) to force Cutler-Hammer to enhance or clarify its answers. The concurrent filing of the sworn-to answers with the motion to dismiss had the effect, under Rule 12(b), of turning the motion to dismiss into a motion for summary judgment under Rule 56. (The District Court, which had the motion under advisement for one year, during which time numerous other pleadings were filed, did not exclude the answers; there was ample opportunity for all parties "to present all material made pertinent to such a motion by Rule 56." F.R.C.P. Rule 12(b).) Under Rule 56, Scanwell could no longer stand on its allegations relating to improper hiring, but had to respond by counter-affidavit, or at least had to convince the court that Cutler-Hammer's response was legally insufficient to answer Scanwell's claim. Scanwell did not at all do the former, and made no serious attempt to do the second. In these circumstances, this part of the factual predicate of Scanwell's third cause of action ceased to have any legal effect.

■■■ As to the remaining portion of Scanwell's theory of unfair competition, that is of course a recognized business tort, but it is limited in scope in a free market economy based on free and open competition for business. While certain acts, such as disparagement of a competitor's product, may be tortious when undertaken solely for the purpose of destroying the rival, they lose their tainted status when undertaken "with the legitimate purpose of reasonably forwarding personal interest and developing trade." *Standard Oil Co. v. United States*, 221 U.S. 1, 58, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911). Scanwell's own complaint alleges that Cutler-Hammer's actions were taken to enhance its own competitive position so that, unless the methods alleged to have been used are by themselves illegal, like trademark infringement, no unfair competition action has been stated. In this connection, it is important that Scanwell did not allege that Cutler-Hammer priced below its own cost, but rather below the cost of others. Whether or not below-cost bidding for a government contract is improper (and we think it is not, *see* 50 Comp.Gen. 50, 54 (1970)),[9] Scanwell's allegation amounts only to a claim that Cutler-Hammer was the low bidder, a clearly legitimate act by a competitor.

■■■ Unjust enrichment, on the other hand is basically an equitable remedy, in which the plaintiff is required to show not only that the defendant has received an advantage, but also that it would be unfair for him to retain that advantage as against the plaintiff. *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 479 F.2d 201, 210–11 (1973). While the remedy is sometimes applied when

---

**9.** The Armed Services Procurement Regulations § 1–311 define "buying in" as "the practice of attempting to obtain a contract award by knowingly offering a price or cost estimate less than anticipated costs with the expectation of either (i) increasing the contract price or estimated cost during the period of performance through change orders or other means, or (ii) receiving future 'follow-on' contracts at prices high enough to recover any losses on the original 'buy-in' contract." The regulation goes on to state that the practice is "not favored" and urges contracting officers to prevent it by getting firm price commitments, and by preventing recovery of the loss on the original contract through change orders or overpricing of later contracts. There is no parallel regulation in the Federal Procurement Regulations, which are applicable to the contract at issue in this case. In any event, the GAO has consistently ruled that evidence of a buy-in does not require that a bid be rejected, but merely that the loss not be recovered. *See* B–156888 (July 2, 1965), B–17445 (February 28, 1972), B–174184 (May 24, 1972) (unpublished decisions of the Comptroller General noted at 1 *CCH Gov't Contracts Rptr.* ¶ 630.60 (1973)). Even to the extent, then, that Scanwell has alleged a buy-in, and assuming that the ASPR provision would be read into the FPR, the bidder's conduct is not regarded by the relevant agencies as sufficiently unfair to prevent a contract award.

the plaintiff is not the person conferring the benefit on the defendant, as where a stranger augments the defendant's goods with those of the plaintiff, *see Restatement of Restitution* § 1, comm. e (1937), it is usually necessary for the plaintiff to show that he conferred the benefit. Scanwell has alleged only that Cutler-Hammer, by its own actions, received an advantage. As a matter of the law of this case, as well as of the law generally, that advantage—the contract for the ILS—did not belong to Scanwell, and would not have even if Scanwell had been the low bidder, since the Government retained the right to reject all bids. 424 F.2d at 864. On these facts, Scanwell is an improper party to ask for restitution; it gave Cutler-Hammer nothing. Furthermore, our analysis of the third count as it applies to unfair competition shows that it would not be unfair to allow Cutler-Hammer, on these allegations, to retain the fruits of the contract as against appellant. Accordingly, the district court properly dismissed the third count against Cutler-Hammer.

*Affirmed.*