**CAL WADSWORTH CONSTRUCTION, a Utah corporation, Plaintiff and Appellant,**

v.

**The CITY OF ST. GEORGE, a municipality, Defendant and Appellee.**

No. 920849–CA.

Court of Appeals of Utah.

Dec. 14, 1993.

Rehearing Denied Jan. 19, 1994.

---

Wilford A. Beesley and Stanford P. Fitts, Salt Lake City, for plaintiff and appellant.

Theodore W. Shumway, St. George, for defendant and appellee.

Before BENCH, DAVIS and JACKSON, JJ.

## OPINION

DAVIS, Judge:

Appellant, Cal Wadsworth Construction, Inc. (Wadsworth), appeals a final judgment in which the trial court determined that appellee, St. George City (City), had not contracted with Wadsworth and hence the City had not breached any contract. We affirm.

## FACTS

We draw the facts primarily from the trial court's findings of fact and reasonable inferences therefrom. The City invited contractors to bid on the St. George Airport Terminal Expansion Project. The proposal form provided by the City included the American Institute of Architects (AIA) Document A201 entitled, "General Conditions of the Contract for Construction." Among other things, the document specified that after execution of the contract, the City could "order changes in the work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and contract Time being adjusted accordingly."

After the City disqualified a low bid, Wadsworth's bid proved to be the lowest responsible bid. The City Manager suggested to the City Council that the City award the bid to Wadsworth subject to negotiations. On January 19, 1991, the Council moved "to award the bid for the Airport Terminal Expansion Project to Wadsworth Construction with the condition and understanding we can negotiate down to a price wherein we can meet budget. If this is not acceptable, re-bid the project."

The parties never prepared or executed a formal contract. On January 29, 1991, City officials personally informed Cal Wadsworth, Wadsworth's principal, that it would be necessary to trim $100,000 from the price of the project to bring it within St. George's budget. Mr. Wadsworth informed the officials that he was confident he could accept certain deletions in the project and thereby reduce the price of the project. Mr. Wadsworth stated he was not prepared to discuss specifics of this proposal. The next day, he returned with a proposal, but the parties never reached an agreement regarding reduction of the project's cost.

On February 7, 1991, the City, through its attorney, announced its intention to reject all

bids received on the project as over budget and to rebid the project. Wadsworth then sued the City for breach of contract.

The trial court entered judgment for the City. The court held that the City Council's actions on January 10, 1991 constituted a conditional award or counter-offer, which Wadsworth never accepted. The court concluded that because the parties never contracted, there was no breach.

The trial court found "it was the intention of the City Council on January 10th 1991, to award the bid only if the cost of the project could be successfully negotiated down within the City's budget. Therefore, no unconditional award of the bid ever occurred." The court further found that "the City Council did not intend their vote at that meeting to be a final award of the contract. The motion and vote were to negotiate, and then award or re-bid depending on the outcome of those negotiations."

The trial court then found that Wadsworth did not accept the condition imposed by the City Council. The court concluded that Wadsworth and the City "never completed the negotiations contemplated by the City Council and thus [Wadsworth] never accepted the City's counter-offer." Wadsworth appeals.

## OFFER AND ACCEPTANCE

Wadsworth claims the court erred as a matter of law in concluding the parties never entered into a contract.

■■■ "An ordinary advertisement for a bid is not itself an offer, rather the bid or the tender is an offer which creates no right until accepted." *Rapp v. Salt Lake City*, 527 P.2d 651, 654 (Utah 1974); *accord Wadsworth Constr. Co. v. Salt Lake County*, 818 P.2d 600, 601 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992). In the case of public contracts, "even after acceptance of the bid, there is no contract until there has been compliance with the requisite formalities." *Rapp*, 527 P.2d at 654; *accord Wadsworth*, 818 P.2d at 601–02.[1] Moreover, a public entity may reject an apparent low bid without being liable for lost profits. *Wadsworth*, 818 P.2d at 602.

■■■ The issue of whether a contract exists may present both questions of law and fact, depending on the nature of the claims raised. *See O'Hara v. Hall*, 628 P.2d 1289, 1290–91 (Utah 1981) (existence of contract is generally conclusion of law, unless there is material dispute of fact, which presents subsidiary question of fact). Thus, our standard of review for this issue turns on whether the claim is one of fact or law, because a ruling on whether a contract exists may embody several subsidiary rulings. The trial court first finds the facts to which the law will be applied, and then it applies the law to those facts to reach a conclusion of law. *See State v. Thurman*, 846 P.2d 1256, 1270 n. 11 (Utah 1993).

In this case, the evidence supports, and Wadsworth does not challenge, the court's findings. Instead, it claims the court erred as a matter of law in concluding the parties never entered into a contract. We thus independently review this claim of law. *See Herm Hughes & Sons, Inc. v. Quintek*, 834 P.2d 582, 583 (Utah App.1992).

---

1. Wadsworth cites *United States v. Purcell Envelope Co.*, 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1919) for the proposition that a public contract is binding even where the document had not been formally signed by the offeree. *See id.* at 319, 39 S.Ct. at 302. We distinguish the facts of *Purcell* from those in the present case. In *Purcell*, even though the postmaster had never signed a formal contract, the Post Office Department had investigated Purcell's financial ability to complete the contract, had executed a written unconditional acceptance for a specified sum to Purcell's offer, and had sent Purcell a written form contract to complete. Purcell in turn, had completed and returned the form contract, along with the requisite bond, to the Post Office Department. *Id.* In the present case, St. George City Ordinance requires a contract of this type to be in writing, signed by the Mayor and attested to by the Recorder. St. George Ord. § 9–5–1(2). More importantly, the offeree in the present case issued a conditional response, whereas in *Purcell*, the acceptance was unconditional.

Here, the court found that while Wadsworth's bid was the lowest responsible bid, the amount bid nevertheless exceeded the City's budget for the project. More importantly, the court also found that the City offered Wadsworth the contract "subject to negotiations." The court determined that in the event the negotiations failed, the project would be rebid. Finally, the court found that the parties never prepared or executed a formal contract. *See Rapp,* 527 P.2d at 654. These findings support the trial court's conclusion that the City never accepted Wadsworth's original offer.

This brings us to the related question of whether the "subject to negotiations" response by the City constituted an acceptance or a counter-offer. Wadsworth claims the City's response was within the scope of the contract and thus was an acceptance. Because the court's findings in this case are not disputed and are supported by the evidence, whether the response is an acceptance or a counter-offer is a question of law, which we review independently. *See O'Hara,* 628 P.2d at 1290–91; *Herm Hughes,* 834 P.2d at 583.

"A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer." *R.J. Daum Constr. Co. v. Child,* 122 Utah 194, 247 P.2d 817, 821 (1952) (citing Restatement of Contracts § 60 (1932)); *accord Candland v. Oldroyd,* 67 Utah 605, 248 P. 1101, 1102 (1926) (conditional response is rejection and counter-offer).

On the other hand, a response is an acceptance where the offeree manifests "unconditional agreement to all of the terms of the offer." *R.J. Daum Constr.,* 247 P.2d at 819; *accord Herm Hughes,* 834 P.2d at 584. The offeree must "manifest a definite intention to accept the offer and every part thereof ... without material reservations or conditions." *R.J. Daum Constr.,* 247 P.2d at 819.

Even when we consider the standard AIA provision that the City may unilaterally issue a change directive for changes within the general scope of the contract, we nevertheless conclude that the City's response contained material reservations or conditions, and was therefore not within the general scope of the contract. *See id.* In short, the City's response was a counter-offer.[2]

## THE COUNTER–OFFER

Given our affirmance of the trial court's conclusion that the City's conditional response constituted a counter-offer, we next consider Wadsworth's alternative claim that it accepted the City's counter-offer.

Here, Wadsworth does not marshal the evidence supporting the court's findings, nor does it challenge the court's findings. Thus, our task is to determine whether the facts as found by the court support its conclusion that Wadsworth did not accept the City's counter-offer.

The court found that on January 29, 1991, Mr. Wadsworth informed City officials that he was not prepared to discuss specifics of the City's response to reduce the project so as to lower the price by $100,000. The court also found that Mr. Wadsworth responded "with a proposal but no agreement was reached as to how the $100,000.00 would be reduced from the project. Nothing further happened in the matter until ... [the] City

---

**2.** Wadsworth also claims the trial court erred in excluding certain exhibits. During trial, the court denied Wadsworth's motion to admit Exhibits 11 and 13. Exhibit 11, a page from an edition of the *Intermountain Contractor,* purported to list the low bidder for different construction projects. The court determined this document constituted inadmissible hearsay.

The court also refused to admit Exhibit 13, identified as a "credit worksheet" prepared by Mr. Wadsworth's brother. The court determined

this document was self-serving and that no foundation supported that Wadsworth ever presented it to the City. The court thus excluded the document because it lacked foundation and was irrelevant.

We conclude that even had the court admitted the exhibits, they would not have affected the court's conclusion that Wadsworth never accepted the City's counter-offer. Therefore, we need not consider whether the exclusion of these exhibits was proper.

... announced its intention to reject all bids." These findings support the trial court's conclusion that Wadsworth did not accept the City's counter-offer.[3]

## CONCLUSION

We therefore affirm the trial court's judgment in favor of the City based on the court's conclusion that the City never accepted Wadsworth's offer and that Wadsworth never accepted the City's counter-offer.

JACKSON, J., concurs.

BENCH, J., concurs in result.

---

3. Moreover, St. George City Ordinance requires a contract of this type to be in writing, signed by the Mayor and attested to by the Recorder. St. George Ord. § 9–5–1(2). *See Covington v. Basich Bros. Constr. Co.,* 72 Ariz. 280, 233 P.2d 837, 840 (1951) (contract with public agency not binding until formal contract executed); *see also Crane v. Timberbrook Village, Ltd.,* 774 P.2d 3, 4 (Utah App.1989) (no mutual assent and no contract when offeror specifies manner of acceptance and offer not accepted in specified manner). Here, the parties agree they never executed a formal contract, much less one signed by the Mayor and attested to by the Recorder.