2003 UT 37

**James D. NIELSEN, Plaintiff and Appellant,**

v.

**GOLD'S GYM and Troy Peterson & Associates, Defendants and Appellees.**

No. 20010510.

Supreme Court of Utah.

Sept. 16, 2003.

Don R. Petersen and Leslie W. Slaugh, Provo, for plaintiff.

Brian C. Harrison, Provo, for defendants.

WILKINS, Justice:

¶ 1 James Nielsen, owner and lessor of commercial real estate in Spanish Fork, Utah, appeals the trial court's dismissal of his complaint against Troy Peterson, a Gold's Gym manager, for breach of a commercial lease agreement. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Peterson signed a standard, pre-printed commercial lease agreement with Nielsen on August 18, 1997. The property in question was described in the lease as a "premises" located at "A Strip Mall at 1341 E Center Spanish Fork, UT," to be used solely as a "Health Club & Gym." The lease term was three years, commencing on November 1, 1997, at an annual rate of $0.85 per square foot.

¶ 3 When the lease was signed by the parties, the building in question was still under construction, and the land was not zoned for a health club. The lease contained an addendum stating, among other things, that the lease was subject to Peterson obtaining a zoning change. The requisite zoning change was obtained in October. After signing the lease, Nielsen referred Peterson to a contractor, who in turn recommended an architect for preparation of interior improvement plans. The contractor prepared an estimate, based on the architectural plans, of approximately $168,000 for tenant improvements to the building shell. After receiving this estimate, Peterson returned to Nielsen to discuss payment for the improvements. The parties failed to reach agreement, no improvements were ever initiated, and Peterson never made any lease payments. After unsuccessfully attempting to re-negotiate with Peterson, Nielsen eventually rented to another tenant and allegedly suffered over $112,000 in damages from the breach.

¶ 4 Nielsen brought suit for breach of contract. At trial, Nielsen testified that he believed the lease obligated him to deliver a building shell. Peterson testified that he believed Nielsen was obligated to pay for tenant improvements and provide a completed building under the lease. Both parties testified that the first discussion about who would pay for tenant improvements did not occur until after the cost estimates were received.

¶ 5 After a bench trial, the trial court ruled that the lease agreement was unenforceable for lack of mutual assent as to the nature and extent of the property to be leased. Specifically, the court ruled that Nielsen failed to establish that there was a meeting of the minds as to which party was to pay for the tenant improvements. Nielsen appeals.

## STANDARD OF REVIEW

¶ 6 We review for correctness the trial court's legal conclusion that the contract is ambiguous. *Parduhn v. Bennett*, 2002 UT 93, ¶ 5, 61 P.3d 982. If a contract is deemed ambiguous, and the trial court allows extrinsic evidence of intent, interpretation of the contract becomes a factual matter and our review is strictly limited. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985).

## ANALYSIS

¶ 7 The trial court held that the lease agreement in this case is ambiguous because certain essential terms, namely, terms governing the payment for tenant improvements, were missing. A lease agreement, like any contract, "is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (quoting *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)). When determining whether a contract term is ambiguous, the court is not limited to the contract itself. *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 19, 48 P.3d 918; *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995). Relevant, extrinsic evidence "of the facts known to the parties at the time they entered the [contract]" is admissible to assist the court in determining whether the contract is ambiguous. *Yeargin, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 2001 UT 11, ¶ 39, 20 P.3d 287.

¶ 8 The trial court allowed extrinsic evidence to assist it in the task of determining ambiguity. At the time the parties signed the lease agreement, the building shell was still under construction. Both parties understood that Peterson intended to operate a health club on the premises and that the property would require significant interior improvements before it could be used for the stated purpose. The trial court concluded

that "the lease document itself is utterly silent on the topic of payment for the improvements." It further found that the subject of improvements was not addressed by the parties, orally or otherwise, prior to or contemporaneously with the signing of the lease agreement. In fact, the trial court noted that the issue of who was to pay for improvements was not even raised until "well after" the lease was signed.

¶ 9 Nielsen argues on appeal that payment of tenant improvements is implicitly addressed in his definition of the term "premises," which he asserts refers only to the building shell that was already planned and under construction at the time the lease was signed. According to Nielsen, the premises could not reasonably consist of both a building shell already planned and any additional, unknown (at the time) tenant improvements. Thus, according to Nielsen, the lease is unambiguous, the duty to pay for tenant improvements lies with Peterson, and the trial court should have enforced the lease according to its terms.

¶ 10 We agree with the trial court's conclusion that this lease agreement is ambiguous. Nielsen's arguments serve only to reinforce the absence of mutual assent as to the one issue that eventually terminated this relationship. While the parties on appeal focus on the term "premises" as a source of contractual ambiguity, our reading of the trial court's ruling reveals that it believed the ambiguity is found in the *absence* of any contractual language addressing payment for the improvements. Thus, this is more a case about missing terms than indefinite terms.

¶ 11 On appeal, Nielsen's only argument was that the trial court erred when it ruled that the contract was ambiguous. Since we agree with the trial court's conclusion of ambiguity, we will only briefly note the ultimate basis for the court's dismissal of Nielsen's action; namely, that there was no meeting of the minds on the essential terms of the lease. "It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract. An agreement cannot be enforced if its terms are indefinite." *Richard Barton Enters. v. Tsern,* 928 P.2d 368, 373

(Utah 1996) (citing *Pingree v. Cont'l Group of Utah, Inc.,* 558 P.2d 1317, 1321 (Utah 1976)); (*Valcarce v. Bitters,* 12 Utah 2d 61, 63, 362 P.2d 427, 428 (1961)) (additional citations omitted); *see also Candland v. Oldroyd,* 67 Utah 605, 608, 248 P. 1101, 1102 (1926) ("So long as there is any uncertainty or indefiniteness, or future negotiations or considerations to be had between the parties, there is not a completed contract. In fact, there is no contract at all.").

¶ 12 In this case, the trial court found that the obligation to pay for tenant improvements is not addressed in the lease itself and cannot be established through any extrinsic evidence. The court must be able to enforce the contract according to the parties' intentions; if those intentions are impenetrable, or never actually existed, there can be no contract to enforce. "A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Acad. Chicago Publishers v. Cheever,* 144 Ill.2d 24, 161 Ill.Dec. 335, 578 N.E.2d 981, 984 (1991) (citations omitted). Here, the trial court could not discern any basis for deciding whether the lease had been breached and, therefore, could not enforce the contract.

¶ 13 Implicit in the trial court's ruling is the conclusion that terms governing payment of tenant improvements are essential to the lease agreement in this case. "Whether or not the [missing term] was essential to the contract requires an examination of the entire agreement and the circumstances under which the agreement was entered into." *Cessna Fin. Corp. v. Meyer,* 575 P.2d 1048, 1050 (Utah 1978). Merely satisfying the minimum requirements for the statute of frauds does not automatically render all contracts sufficiently definite to be enforced by the courts. In this case, the building shell itself was still under construction when the lease was signed. Uncontroverted trial testimony establishes that the contractor had not completed the floor of the building shell because he anticipated

that tenant improvements would require modification to the original building plans for plumbing and electrical configurations. Nor were the roof and walls completed. This renders the question of payment even more important, because it is not clear from the lease who was required to pay for those tenant-based modifications to the building shell. Furthermore, there was no evidence at trial concerning industry customs or standards, or any other extrinsic evidence, that would aid the court in determining responsibility for payment. Finally, even Nielsen notes that the cost of improvements "would have consumed more than half of the total rents over the three-year term of the lease," constituting a significant portion of the overall costs associated with the lease. While payment for tenant improvements is by no means an essential term in every commercial lease agreement, the facts of this case persuade us that it was an essential part of the bargain to be reached here.

## CONCLUSION

¶ 14 We uphold the trial court's legal determination that the lease agreement was ambiguous due to missing terms, specifically, those terms governing payment of tenant improvements. The trial court's interpretation of the contract after finding ambiguity was not challenged on appeal; thus, we also uphold the trial court's ruling that the contract was unenforceable for lack of mutual assent as to the essential terms governing which party was to pay for tenant improvements. The judgment of dismissal is affirmed.

¶ 15 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.