**Benoit BROOKENS, II, Appellant,**

v.

**UNITED STATES of America et al.**

**No. 79–1115.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 19, 1979.

Decided June 19, 1980.

As Amended June 19, 1980.

---

Benoit Brookens, pro se.

John H. Sturc, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert,* U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on brief, for appellee.

Before MacKINNON and WALD, Circuit Judges and PRATT **, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Benoit Brookens, an employee of the United States Department of State, filed suit against the government alleging that the State Department violated Section 7 of the Privacy Act of 1974 in requiring his Social Security Number and using it in connection with travel advances. He was unsuccessful in his contention on appeal to the Department of State Privacy Policy and Appeals Board and his subsequent civil action was dismissed by the United States District Court pursuant to F.R.Civ.P. 12(b)(1) and (6).

Before the Department of State he contended:

"that the [Social Security Number] was not relevant for travel advances and that its policy of requiring the [Social Security Number] for general identification violated Section 7 of the Privacy Act of 1974. The employee requested that the agency amend the employees records which contained the [Social Security Number] and desist from its policy of refusing to provide employee services to employees who refuse to furnish their [Social Security Number]."

Appellant's Br. p. 3. The Department did not comply with his request.

As Brookens describes his alleged cause of action, it rests on the allegation that the State Department "[improperly] denied a travel advance on January 10, and 23, and March 3, 1978 he refused to disclose his Social Security Number to the requesting official." Appellant's Brief, p. 3. Thereafter on March 10th and 16th, 1978, Brookens wrote the Department alleging that the Social Security Number was not relevant for travel advances and that its policy of requiring the Social Security Number for general identification violated Section 7 of the Privacy Act of 1974. In reliance he cited 22 C.F.R. 6a.9(c), 5 U.S.C. § 552a(d)(2). He then requested that the State Department amend his records which contain the Social Security Number and desist from its policy of refusing to provide travel advances to employees who refuse to furnish their Social Security Number.

* United States Attorney at the time the brief was filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

The State Department did not amend his files as requested and he accordingly appealed under Regulation 22 C.F.R. 6a.9, 5 U.S.C. § 552a(d)(3) to the Department of State's Privacy Policy and Appeals Board. The Executive Secretary of the Privacy Policy and Appeals Board on May 11, 1978 informed Brookens in a letter that they would "reassess those processes in which the Social Security Number is utilized as well as to review the forms which solicit it. The Privacy Staff has initiated this project and will advise you of the results. At that time you may wish to reconsider your amendment request in light of these findings." Appellant's Br., pp. 4–5.

Seven days later, on May 18th, Mr. Brookens indicated he did not concur with the action taken by the Department of State, and on May 22, 1978, he filed this suit in the United States District Court for the District of Columbia, in which he demands an injunction against the Department of State's use of his Social Security Number for identity verification, declaratory relief, damages of $25,000 and attorney's fees.

The issue here is whether the use by the Department of State of Social Security numbers as alleged constitutes a violation of that provision of Section 7[1] which makes it "unlawful for any Federal . . . agency to deny to any individual any right, benefit or privilege provided by law because of such individual's refusal to disclose his social security account number." The Government contends the Act is not violated because subparagraph (a)(2) of Section 7 provides that the provision quoted above:

"shall not apply with respect to—. . .
(B) the disclosure of a social security number to any Federal . . . agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual."

*Id.,* Sec. 7(a)(2)(B).

The need to use security numbers for identification is explained by the Government in FBM Letter 295–4 (CSC Form 652 17–74):

"Disclosure by you of your social security number (SSN) is mandatory to obtain the services, benefits or processes that you are seeking. Solicitation of the SSN by the United States Civil Service Commission is authorized under provisions of Executive Order 9397, dated November 22, 1943. The SSN is used as an identifier throughout your Federal career from the time of application through retirement. It will be used primarily to identify your records that you file with the Civil Service Commission or agencies. The SSN also will be used by the Civil Service Commission and other Federal agencies in connection with lawful requests for information about you from your former employers, educational institutions and financial or other organizations. The information gathered through the use of the number will be used only as necessary in personnel administration processes carried out in accordance with established regulations and published notices of systems of records. The SSN also will be used for the selection of persons to be included in statistical studies of personnel management matters. The use of the

---

**1.** Section 7 of the Privacy Act of 1974 provides:

"(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

"(2) the provisions of paragraph (1) of this subsection shall not apply with respect to—

"(A) any disclosure which is required by Federal statute, or

"(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

"(b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." P.L. 93–579.

SSN is made necessary because of the large number of present and former Federal employees, and applicants who have identical names and birth dates, and whose identities can only be distinguished by the SSN."
Rec. 7.

The Government moved to dismiss Brookens' cause of action for lack of jurisdiction over the subject matter, F.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, *Id.*, Rule 12(b)(6). In resisting these motions Brookens filed a large number of documents, requested the Court to rely upon them in ruling on the Government's motions and challenged the Government to prove that the Department of State had used social security numbers in its system of records before January 1, 1975. In response the Government filed the Kotok Affidavit, *infra*, and Executive Order 9397 and moved to dismiss.

On November 22, 1943, President Roosevelt issued Executive Order 9397 entitled, "Numbering System for Federal Accounts Relating to Individual Persons." This order provided that "any Federal Department . . . shall whenever the head thereof finds it advisable to establish a new system of permanent account numbers pertaining to individual persons, utilize exclusively the Social Security Act account numbers assigned pursuant to Title 26, Section 402.502 of the 1940 Code of Federal Regulations and pursuant to paragraph 2 of this order." [2]

To prove that the State Department complied with Executive Order 9397, and therefore with the exemptive provision in Section 7 of the Privacy Act, the Government in the District Court filed the Affidavit of Sharon Bandy Kotok, Chief of the Privacy Staff of the Foreign Affairs Document and

**2.** Executive Order 9397 of November 22, 1943 provided:

### EXECUTIVE ORDER 9397
### NUMBERING SYSTEM FOR FEDERAL ACCOUNTS
### RELATING TO INDIVIDUAL PERSONS

WHEREAS certain Federal agencies from time to time require in the administration of their activities a system of numerical identification of accounts of individual persons; and

WHEREAS some seventy million persons have heretofore been assigned account numbers pursuant to the Social Security Act; and

WHEREAS a large percentage of Federal employees have already been assigned account numbers pursuant to the Social Security Act; and

WHEREAS it is desirable in the interest of economy and orderly administration that the Federal Government move towards the use of a single, unduplicated numerical identification system of accounts and avoid the unnecessary establishment of additional systems;

NOW, THEREFORE, by virtue of the authority vested in me as President of the United States, it is hereby ordered as follows:

1. Hereafter any Federal department, establishment, or agency shall, whenever the head thereof finds it advisable to establish a new system of permanent account numbers pertaining to individual persons, utilize exclusively the Social Security Act account numbers assigned pursuant to Title 26, section 402,502 of the 1940 Supplement to the Code of Federal Regulations and pursuant to paragraph 2 of this order.

2. The Social Security Board shall provide for the assignment of an account number to each person who is required by any Federal agency to have such a number who has not previously been assigned such number by the Board. The Board may accomplish this purpose by (a) assigning such numbers to individual persons, (b) assigning blocks of numbers to Federal agencies for reassignment to individual persons, or (c) making such other arrangements for the assignment of numbers as it may deem appropriate.

3. The Social Security Board shall furnish, upon request of any Federal agency utilizing the numerical identification system of accounts provided for in this order, the account number pertaining to any person with whom such agency has an account or the name and other identifying data pertaining to any account number of any such person.

4. The Social Security Board and each Federal agency shall maintain the confidential character of information relating to individual persons obtained pursuant to the provisions of this order.

5. There shall be transferred to the Social Security Board, from time to time, such amounts as the Director of the Bureau of the Budget shall determine to be required for reimbursement by any Federal agency for the services rendered by the Board pursuant to the provisions of this order.

6. This order shall be published in the Federal Register.

THE WHITE HOUSE
November 22, 1943.
/s/ Franklin D. Roosevelt

Reference Center, Department of State. She was the official immediately responsible for the implementation of the Privacy Act of 1974 within the State Department. We interpret her affidavit, which is set forth in the margin,[3] as constituting adequate proof that the Department of State was a Federal agency maintaining a system of records in existence and operating before January 1, 1975 and disclosure of a Social Security number to identify individuals was required under regulation, i. e., E. O. 9397, adopted prior to such date, i. e., on November 22, 1943.

The Executive Order and the allegations in this affidavit are not refuted by the appellant. He contends, however, that the Executive Order is not a regulation under Section 7(a)(2)(B), *supra,* and that he asked for discovery of certain documents but it was denied him. The Executive Order, however, is within the meaning of a regulation. In *National Ass'n of Letter Carriers*

*v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) the Supreme Court observed that the Executive Order there under consideration was a "regulation" under "5 U.S.C. § 7301, which provides that '[t]he President may prescribe *regulations* for the conduct of employees in the executive branch.'" 418 U.S. 273, n. 5, 94 S.Ct. 2776, n. 5. (Emphasis added). The broad employment policies prescribed in Executive Order 10988, issued January 18, 1962, 27 Fed.Reg. 551 were also recognized as the equivalent of regulations in *Manhattan-Bronx Postal Union v. Gronouski,* 350 F.2d 451, 456 (D.C.Cir.1965), *cert. denied,* 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966). The record also discloses that appellant in a Freedom of Information Act request[4] had previously requested the same documents he requested in his discovery and that he apparently received them from the appellee.[5] In this case appellant has not denied receiving said documents.

**3.** 1. I, Sharon Bandy Kotok . . . make these statements on my own knowledge and upon information furnished to me in the course of my official duties.

2. I am familiar with the complaint submitted by Mr. Benoit Brookens concerning the Department of State's implementation of Section 7 of the Privacy Act, 5 USC 552a.

3. To the best of my knowledge, all systems which currently utilize the Social Security Number were in existence and operational prior to January 1, 1975. Further, in compliance with Section 7 of the Privacy Act, the Department established the policy, based on the authority derived from E.O. 9397, to require the Social Security Number only for those purposes clearly associated with the employment, personnel, and payroll processes. Accordingly, all pertinent forms utilized within the Department were revised to reflect the provision under the Act, as well as the Department's related policy; these forms were revised under the guidance provided by the Civil Service Commission.

**4.**
21 May 1978
Benoit Brookens, II
2480–16th St, NW Apt 532
Washington, DC 20009
Mrs. Barbara Ennis
Director,
Freedom of Information Staff
Bureau of Public Affairs
Department of State
Washington, DC 20520
Dear Mrs. Ennis:
The Department of State, under the authority of Executive Order 9397 dated November

28, 1943 was authorized to establish a new system of permanent employee account numbers which utilized exclusively social security account numbers.

Could you provide information concerning a) the date that Department decided to exercise this authority and establish such a system, and b) citation (or copy) of records that implemented such a system if the Department actually decided to exercise this authority.
Sincerely,
Benoit Brookens, II
Gov't Br., p. 24.

**5.** [SEAL]
DEPARTMENT OF STATE
Washington, D.C. 20520
6/27/78
Dear Mr. Brookens:
Re: Freedom of Information Case # 820610
I am writing in response to your recent request for material under the Freedom of Information Act.

(✓) 1. Our search has revealed information relevant to your request. *The releasable documents are enclosed.* Payment is now due in the amount $6.00, ($—0— for search and $6.00 for duplication $—0— computer services.) Please make your check payable to the Treasurer of the United States and send it to this office.
Sincerely,
Kenneth R. Strawberry
Freedom of Information Staff
Bureau of Public Affairs
Gov't Br., p. 25. (Emphasis added).

The case is thus in the posture that the record presented by the parties raised the factual issue for the court's determination as to whether the Department of State was maintaining a system of records as specified in Section 7(a)(2)(B) before January 1, 1975. The Government's affidavit demonstrated such compliance and Brookens failed to come forward with any evidence in contradiction thereof. That fact is the determinative one in the case so the Government's showing in the absence of any contradictory evidence is conclusive. Under such circumstances it is proper to dismiss the case irrespective of its technical procedural posture. The filing of the sworn affidavit with the motion to dismiss under Rule 12(b) turned the motion into one for summary judgment under Rule 56, as we held in *Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941, 949 (D.C.Cir.1975); *cf. Irons v. Schuyler*, 465 F.2d 608, 613 (D.C.Cir.1972); *Gager v. "Bob Seidel"*, 300 F.2d 727, 731 (D.C.Cir.1962). Such dismissal is justified because no material factual issue remains and the government is entitled to a grant of summary judgment. *Richardson v. Rivers*, 335 F.2d 996, 998 (D.C.Cir.1964).

It should also be noted that all travel advances, unless fully supported by proper expense statements filed with the Department, may constitute personal income and thus may be subject to personal income and Social Security payroll taxes. Therefore, it is self-evident that travel advances to employees are directly related to employment, personnel and payroll procedures for which the agency is required to maintain a "system of records".

Under all of these circumstances we accept the sworn statement in the Kotok affidavit and order that the District Court enter a judgment of dismissal on the merits.

*Judgment accordingly.*