[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR PRETRIAL RELEASE PURSUANT TO CONNECTICUT GENERAL STATUTES SECTION 54-64a(1)
The Defendants, all of whom have been released pending trial on promises to appear with special conditions or are being held in lieu of nominal five hundred dollar surety bonds with the same special conditions, here move for pretrial release upon the execution of written promises to appear without special conditions.
BACKGROUND
On Friday December 28, 1990, seventeen individuals were arrested by personnel of the Bridgeport Police Department inside the Summit Women's Center, 221 Middle Street, Bridgeport. According to the police reports the individuals had chained and locked themselves together and had chained and locked the doors of the building. Thereafter, the seventeen individuals refused to leave.
When the police arrived, the seventeen arrestees refused to leave, refused to identify themselves, refused to unlock the chains, and refused in any way to cooperate with the police. A locksmith was called to remove the locks and chains. Thereafter, the seventeen were arrested by the police and had to be physically carried out of the building, to and from the police vehicles, and into the police station. At the police station, the arrestees refused to cooperate in any way and refused to identify themselves. The Defendants were charged with violating the following: CT Page 1090
Criminal Trespass, First Degree, C.G.S. 53a-107;
Reckless Endangerment, Second Degree, C.G.S. 53a-64;
Refusal to be Fingerprinted, C.G.S. 53a-64.
Bond for the Defendants was set at $8,500.00 at the Bridgeport Police Department. One Defendant, Aimee Odland, was released from custody at the Bridgeport Police Department on Saturday, December 29, 1990, after providing identification information and documentation.
The remaining Defendants were first brought before this Court on Monday, December 31, 1990, again having to be carried by law enforcement authorities. Each Defendant appeared on the docket identified only as John Doe or Jane Doe.
The attorney who appeared for the Defendants represented that the Defendants would cooperate in the identification process if released on promise to appear bonds. The Court informed each Defendant that the bond would be a written promise to appear with conditions that: 1) the Defendant proceed immediately to the Bridgeport Police Department to be processed, specifically to include fingerprints, photographs, social security numbers and other identifying information; and 2) the Defendant stay away from the site of the alleged offense during the pendency of these charges.
The condition concerning identification was set as an accommodation to the Defendants. Since processing had not been done at the time of arrest and there was not sufficient time to have the Defendants return to the police department for processing and returned to Court for arraignment on that day, the Defendants were ordered to submit to processing as a condition of release. One alternative would have been to retain the $8,500.00 bond set by the police and bail commissioner and continue the cases to another day when identification and background information could be ascertained.
All but five agreed to the conditional promise to appear and were released accordingly. Five Defendants, identified by the attorney as William Vickery, John McCarthy, Dawn Denton, Amy Boissonneault, and Kathryn Trudell, who according to their attorney reside outside the State of Connecticut, refused to provide social security numbers and/or to stay away from the site of the offense. For these five Defendants the Court set a nominal bond of $500.00 with the same special conditions. The attorney for the Defendants questioned the special conditions on the bonds and was ordered to brief the issues for CT Page 1091 the next court appearance.
On January 11, 1991, the attorney for the five Defendants still being held in lieu of bond presented a motion for modification of the terms of release which was denied by the Presiding Judge, the Honorable William Hickey. Thereafter, the motion for modification was raised when all Defendants appeared in Court on January 28, 1991. Again, the attorney for the Defendants was ordered to brief the issues. The State of Connecticut was afforded the opportunity to brief the issues and the motion scheduled for February 15, 1991.[1]
LEGAL DISCUSSION
The Defendants have moved to modify nonfinancial conditions of release set by this Court concerning their providing Social Security numbers and not returning to the site of the alleged offenses. Provisions for pretrial release in the State of Connecticut are codified in Connecticut General Statutes,54-64a. Section 54-64a provides:
Release by judicial authority.
 (a)(1) When any arrested person is presented before the superior court, said court shall, in bailable offenses, promptly order the release of such person upon the first of the following conditions of release found sufficient to reasonably assure the appearance of the arrested person in court: (A) Upon his execution of a written promise to appear without special conditions, (B) upon his execution of a written promise to appear with nonfinancial conditions, (C) upon his execution of a bond without surety in no greater amount than necessary, (D) upon his execution of a bond with surety in no greater amount than necessary. In addition to or in conjunction with any of the conditions enumerated in subparagraphs (A) to (D), inclusive, of this subdivision the court may, when it has reason to believe that the person is drug-dependent and where necessary, reasonable and appropriate, order the person to submit to a urinalysis drug test and to participate in a program of periodic drug testing and treatment. The results of any such drug test shall not be admissible in any criminal proceeding concerning such person.
 (2) The court may, in determining what conditions of release will reasonably assure the appearance CT Page 1092 of the arrested person in court, consider the following factors: (A) The nature and circumstances of the offense, (B) such person's record of previous convictions, (C) such person's past record of appearance in court after being admitted to bail, (D) such person's family ties, (E) such person's employment record, (F) such person's financial resources, character and mental condition and (G) such person's community ties.
Additionally, the Connecticut Practice Book addresses pretrial release. Practice Book 658, which addresses release by the judicial authority, provides:
 When any defendant not released on bail is presented before a judicial authority, such authority shall, in bailable offenses, promptly order the release of such person upon the first of the following conditions of release found sufficient to assure his appearance in court:
 (1) His execution of a written promise to appear without special condition;
 (2) His execution of a written promise to appear with nonfinancial conditions;
 (3) His execution of a bond without surety in no greater amount than necessary;
 (4) His deposit with the clerk of the court of an amount of cash equal to ten percent of the amount of the surety bond set, pursuant to Sec. 664;
 (5) His execution of a bond with surety in no greater amount than necessary.
 In lieu of or in addition to these conditions, the judicial authority may impose one or more of the conditions in Sec. 667 which will reasonably assure the defendant's appearance as required and the safety of any person or of the community.
(Emphasis supplied).
Practice Book 667, entitled "Prohibition of Wrongful Acts Pending Trial", provides:
(a) Upon a showing that there exists a CT Page 1093 danger that the defendant will commit a serious crime, or will seek to intimidate witnesses, or will otherwise unlawfully interfere with the orderly administration of justice, the judicial authority, upon the defendant's release, may enter an order that he do one or more of the following:
 (1) Remain under the supervision of a designated person or organization;
 (2) Comply with specified restrictions on his travel, association, or place of abode;
 (3) Not engage in specified activities, including the use or possession of a dangerous weapon, an intoxicant, or a controlled substance, if the judicial authority believes that such activities could lead to criminal conduct which is similar to that charged or of which the defendant has been previously convicted.
 (b) When the judicial authority has reason to believe that the defendant is drug dependent, it may order the defendant to submit to a urinalysis drug test and to participate in a program of periodic drug testing and treatment.
Practice Book 666, entitled "Factors to be Considered in Release Decision", provides:
 Among the factors to be considered in determining the appropriate conditions of release and, if a bond is required, its amount, are the following:
 (1) The nature and circumstances of the offense insofar as they are relevant to the risk of nonappearance;
 (2) The weight of the evidence against the defendant;
 (3) The defendant's record of previous convictions;
 (4) The defendant's past record of appearance in court after being admitted CT Page 1094 to bail;
(5) The defendant's family ties;
(6) The defendant's employment record;
 (7) The defendant's financial resources, character, and mental condition; and
(8) The defendant's community ties.
As detailed supra, no identifying information whatsoever had been provided to the arresting officials or court officials prior to the initial court appearance. Indeed, the identity of all but one of the Defendants was provided only through the one attorney who represented each Defendant at that time. To date, nothing has been provided to this Court concerning the Defendants' family ties, employment records, financial resources, character, mental conditions, and community ties. As to community ties, the five Defendants being held in lieu of $500.00 bonds are all out-of-state residents according to the attorney.
A. CONDITION THAT DEFENDANTS STAY AWAY FROM THE SITE OF THE ALLEGED CRIMINAL ACTIVITY
The Defendants' argue that this Court lacks the authority to order the Defendants to stay away from the site of the alleged criminal activity as a condition of release. This Court disagrees.
As noted supra, Practice Book 658 provides that, in determining conditions of release, in addition to the conditions specified, the judicial authority may impose any of the conditions contained in 667, which include restrictions on travel, association, and participation in specified activities which could lead to criminal activity similar to that charged. By ordering the Defendants to stay away from the site of the alleged criminal activity, this Court has merely restricted the travel and associations of the Defendants, as well as their participation in further activities which could lead to criminal conduct similar to that charged.
As to the Defendants' participating in similar conduct, some of these Defendants were on trial in Norwalk on similar charges shortly before the arrests here. Moreover, their attorney at arraignment has stated to the Court on two separate occasions that a nonappearing Defendant was on trial on similar charges in another state. CT Page 1095
This Court believes that some protection from intimidation should be afforded to the witnesses and victims who work at the site of the alleged criminal activities. This Court has found probable cause to believe that the Defendants recklessly engaged in conduct which created a risk of physical injury to other persons. Those victims should be free from intimidation during the pendency of these charges. Based on the behavior of the Defendants, this Court finds that this condition is necessary to the orderly administration of justice in this case. The Practice Book, the statutes and caselaw support restrictions on the travel and associations of defendants to protect witnesses. State v. Farrar, 7 Conn. App. 149, 159-61, cert. denied, 200 Conn. 803 (1986).
Finally, this Court believes that, given the facts of this case, it is within the inherent power of the Court to attach nonfinancial conditions of pretrial release in order to protect witnesses and to advance the orderly administration of justice.
B. CONDITION THAT DEFENDANTS DISCLOSE SOCIAL SECURITY NUMBERS
The Court, in setting nonfinancial conditions of bond, ordered the Defendants to provide to the Bridgeport Police Department identifying information including photographs, fingerprints, and social security numbers. The Defendants argue that this Court is not empowered to order the disclosure of Social Security numbers since those numbers are unrelated to assuring the defendants' appearance in Court or protecting society. The Defendants' argue that the function and purpose of a Social Security number is not for identification but rather the Social Security system was enacted to facilitate the furnishing of financial assistance to the aged and other needy individuals.
The Social Security Act is codified in Title42, United States Code, 301
et. seq. The Federal Privacy Act, codified in Title 5, United States Code, 552a is applicable here since other federally created rights are implicated.
In Green v. Philbrook, 576 F.2d 440 (2d Cir 1978), the court found that the Privacy Act did not prohibit requiring children who receive state aid to furnish social security numbers. The court stated that "Congress has determined that social security numbers are useful to the efficient and economical administration of federal assistance programs." Id. at 445. The Green court cited section 7 of the Privacy Act (5 U.S.C. § 552a) which provides as follows: CT Page 1096
 (a)(1) It shall be unlawful for any Federal, State, or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.
 (2) the provisions of paragraph (1) of this subsection shall not apply with respect to —
 (A) any disclosure which is required by Federal statute, or
 (B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.
Id. at 445-446.
In Brookens v. United States, 627 F.2d 494 (D.C. Cir. 1980), the court held that the State Department did not violate the Privacy Act by requiring an employee to provide his social security number for identification purposes and using it to deny a travel advance. The court found no violation because the State Department was exempt from the Privacy Act since it had been using social security numbers for identification purposes under a system of records that predated implementation of the act. The court held that such use of the numbers was permissible if a regulation mandating such use was extant. The court found that an Executive Order explaining the use of social security numbers had been enacted, Id. at 496; and that such an order qualified as a regulation. Id. at 498.
The court in Doyle v. Wilson, 529 F. Sup. 1343, 1349
(D.Del. 1982) determined that disclosure of social security numbers could not be required to secure a refund of a motor vehicle fine. Mandatory disclosure could only be justified, the court said, if "(1) . . . incident to the administration of a state driver's license or motor vehicle registration law under42 U.S.C. § 405; or (2). . .[i]f required under a statute or regulation adopted prior to January 1, 1975, under a system of records in existence and operating before that date. . ." Id.
In Wolman v. United States, 542 F. Sup. 84 (D.D.C. 1982), CT Page 1097 the court held that the Selective Service System could require registrants to supply their numbers, pursuant to regulations enacted after 1980. Congress promulgated the necessary regulations subsequent to the decision in Wolman v. United States, 501 F. Sup. 310 (D.D.C. 1980). The court in Wolman II stated: "Both Houses of Congress regarded correcting the legislative gap noted in this Court's earlier ruling as an essential measure to ensure an `effective and efficient program for identifying those who do not register.'" Wolman,542 F. Supp. at 86.
The statutes concerning the Connecticut State Police Bureau of Identification are codified in Connecticut General Statutes29-11, et seq. These statutes provide for the taking of a person's fingerprints, photographs, physical description, and personal history data. The statutes are silent as to the taking of a person's social security number.
Apparently then, there are no statutes or regulations requiring the mandatory provision of social security numbers to the police at the time of arrest. While arrested persons may provide voluntarily their social security numbers, they may not be required to do so. A fortiori the trial court may not mandate the provision of social security numbers to the police for identification purposes as a condition of release.
Accordingly, the condition of release concerning providing social security numbers to the Bridgeport Police Department is vacated. The condition of release concerning providing other identifying background information, fingerprints and photographs remains a special condition of release.
CONCLUSION
Based on all the foregoing, the motions for pretrial release upon the execution of written promises to appear without special conditions are denied. The special condition of bond ordering the defendants to disclose social security numbers is vacated. However, all other identification procedures and information must be provided to the Bridgeport Police Department. The special condition that the Defendants stay away from the site of the alleged criminal activity remains a condition of release.
So ordered.
MICHAEL HARTMERE, J.