*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 12**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ZB, N.A. D/B/A
ZIONS FIRST NATIONAL BANK,
*Appellee,*

*v.*

SHAYNE D. CRAPO,
*Appellant.*

No. 20160218
Filed February 24, 2017

On Direct Appeal

Third District, Salt Lake
The Honorable Barry G. Lawrence
No. 140907019

Attorneys:

James K. Tracy, Joshua L. Lee, Salt Lake City, for appellee

Richard J. Armstrong, Jacob A. Green, Lehi, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUDGE MORTENSEN joined.

Having recused herself, JUSTICE DURHAM did not participate herein; COURT OF APPEALS JUDGE DAVID N. MORTENSEN sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶ 1   This case presents the question of whether a debtor's receipt of an IRS Form 1099-C—a reporting tool designed to help the IRS track lenders' debt forgiveness—creates a genuine issue of material fact as to whether a lender has forgiven a debt or as to whether the lender is estopped from collecting on it. The IRS requires that a lender file a Form 1099-C with the IRS and issue a copy to the debtor

when there has been an "identifiable event." As defined by the IRS, some "identifiable event[s]" involve an actual discharge—i.e., cancellation or forgiveness—of debt. But one "identifiable event," called "identifiable event code H," requires the lender to file the form upon the expiration of a 36-month period where no payments have been made on a debt, regardless of whether an actual discharge of the debt has occurred.[1]

¶ 2   Shayne Crapo borrowed $250,000 from Zions First National Bank (Zions Bank). Mr. Crapo initially made payments on the loan, but he eventually defaulted. After the expiration of a 36-month period with no payments being made on the loan, Zions Bank issued Mr. Crapo a Form 1099-C. The form listed "H" as the event code, but also listed "FORGIVEN DEBT AMT 3 YRS NO PAYMENT" in the "Debt description" field, and "$250,000.00" in the "Amount of debt discharged" field. Mr. Crapo claims that he reported the $250,000 as income on his tax return, which increased his tax burden for that year.

¶ 3   Zions Bank brought a deficiency action to recover the amount due on the loan. The district court below granted summary judgment in favor of Zions Bank, holding that Mr. Crapo failed to show that the evidence created a genuine dispute of material fact as to whether Zions Bank in fact discharged the debt or as to whether it is estopped from collecting on it. The court accordingly entered judgment against Mr. Crapo for the amount of the loan, plus fees, costs, and interest. Mr. Crapo appeals, arguing that the evidence creates a genuine dispute of material fact as to both actual discharge and estoppel.

¶ 4   We affirm the district court on both grounds. Mr. Crapo has failed to adduce sufficient evidence to permit a reasonable fact finder to conclude that Zions Bank either actually discharged or is estopped from collecting his debt.

---

[1] We note that the IRS has recently removed event code H from this reporting requirement. *See* Removal of the 36-Month Non-Payment Testing Period Rule, 81 Fed. Reg. 78908 (Nov. 10, 2016) (to be codified at 36 C.F.R. pt. 1), *available at* https://www.gpo.gov/fdsys/pkg/FR-2016-11-10/pdf/2016-27160.pdf. We discuss the regulations in force at the time of events relevant to this proceeding.

## Background

¶ 5   In December 2006, Mr. Crapo and Zions Bank entered into a "Home Equity Line Credit Agreement and Disclosure" (the Note). Mr. Crapo drew upon the line of credit the same day, withdrawing the full $250,000 limit. The Note contains a "Delay in Enforcement" clause (Nonwaiver Clause) providing that Zions Bank "may delay or waive enforcement of any of [its] rights under" the Note "without losing that right or any other right."

¶ 6   Mr. Crapo made payments to cover the accruing interest until September 2010, after which he made no further payments. In October of that year, Zions Bank accelerated the balance of the Note, demanding payment in full. In January 2011, it created an internal "Charge Off Request" document (Charge Off Request) in which a Zions Bank representative requested that the balance due under the Note "be charged off due to the lack of collateral and transferred to [the] Recovery Department for further collection efforts."

¶ 7   As of December 31, 2013, Mr. Crapo had not made any payments on the Note in the preceding 36-month period. In January 2014, Zions Bank issued an IRS Form 1099-C to Mr. Crapo. An IRS regulation requires that a lender file a Form 1099-C whenever the lender "discharges" an "indebtedness" of at least $600.[2] The regulation defines "discharge" in a way that includes more than actual discharges. It provides that, "[s]olely for purposes of the reporting requirements of" this regulation, "a discharge of indebtedness is deemed to have occurred . . . if and only if" an "identifiable event" has occurred, "whether or not an actual discharge of indebtedness has occurred."[3] The regulation then provides eight different identifiable events. The first seven, codes A–G, correlate to events that necessarily involve an actual discharge of debt.[4] The eighth, event code H, is not tied to an actual discharge, but requires that a form be sent upon the expiration of a "non-

---

[2] 26 C.F.R. § 1.6050P-1(a)(1) (2013).

[3] *Id.*

[4] *E.g., id.* § 1.6050P-1(b)(2)(i)(G) ("A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt[.]").

payment testing period."[5] The regulations define the non-payment testing period as follows:

> There is a rebuttable presumption that an identifiable event . . . has occurred during a calendar year if a creditor has not received a payment on an indebtedness at any time during a testing period . . . ending at the close of the year. The testing period is a 36-month period increased by the number of calendar months during all or part of which the creditor was precluded from engaging in collection activity by a stay in bankruptcy or similar bar under state or local law.[6]

In sum, on December 31 of any given year, there is an identifiable event code H for each indebtedness on which the borrower has not made a payment during the preceding 36 months.

¶ 8   IRS Form 1099-C itself contains a section called "Instructions for Debtor," which explains the reason for its being sent. The form states:

> You received this form because . . . a lender[] has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income. . . . However, you may not have to include all of the canceled debt in your income. . . . If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged . . . .

The instructions on the form also state that "Box 6"—which is titled "Identifiable event code"—"[m]ay show the reason your creditor has filed this form." The form then provides a description of each event code, including "H – Expiration of nonpayment testing period." The form also states that "[i]f you are required to file a return, a negligence penalty or other sanction may be imposed on you if

---

[5] *Id.* § 1.6050P-1(b)(2)(i)(H).

[6] *Id.* § 1.6050P-1(b)(2)(iv).

taxable income results from this transaction and the IRS determines that it has not been reported."

¶ 9 In the particular Form 1099-C sent to Mr. Crapo, box 6, labeled "Identifiable event code," states "H." Box 4, labeled "Debt description," states "FORGIVEN DEBT AMT 3 YRS NO PAYMENT." Box 1, the "Date of identifiable event" field, lists "12/31/2013." Box 2, labeled "Amount of debt discharged," lists "$250,000.00." Mr. Crapo alleges that he reported the $250,000 as income, increasing his tax burden for that year. The record contains no specific evidence of the amount of tax burden this imposed on Mr. Crapo. Instead, it contains an affidavit from Mr. Crapo that states: "Following the instructions in the 1099-C, I included the full $250,000.00 value of the loan in my gross income for the tax year 2013. As a result, my tax burden increased for that year." The record contains no indication that Mr. Crapo consulted with Zions Bank or sought advice about the implications of the Form 1099-C he received.

¶ 10 Zions Bank brought a deficiency action to recover the amount due on the loan, and at the close of discovery the parties filed cross-motions for summary judgment. Zions Bank argued that because Mr. Crapo's default on the debt was undisputed, the court should enter judgment against him for the amount of the loan plus costs, fees, and interest. Mr. Crapo made two arguments. First, that the Form 1099-C was prima facie evidence that Zions Bank in fact discharged the debt, and second, that Zions Bank was estopped from collecting the debt. The district court rejected both of Mr. Crapo's arguments and granted summary judgment in favor of Zions Bank. Mr. Crapo appeals that determination. On appeal, he argues that the Form 1099-C creates a genuine dispute of material fact as to both the actual discharge and estoppel issues.

### Standard of Review

¶ 11 "Summary judgment is appropriate when the evidence 'shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'"[7] "An appellate court reviews a [district] court's legal conclusions and ultimate grant or denial of summary judgment for correctness and

---

[7] *Federated Capital Corp. v. Libby*, 2016 UT 41, ¶ 7, 384 P.3d 221 (citation omitted).

views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[8]

## Analysis

¶ 12 Mr. Crapo argues that summary judgment was improper on two grounds. First, he claims there is a genuine dispute of material fact as to whether Zions Bank actually discharged the Note. Second, he claims there is such a dispute regarding whether Zions Bank is estopped from collecting on the Note. We conclude that neither issue presents a genuine dispute of fact because Mr. Crapo's evidence is insufficient to permit a reasonable fact finder to conclude that Zions Bank actually discharged or is estopped from collecting the Note. We therefore conclude that the district court properly granted judgment as a matter of law for Zions Bank.

¶ 13 Regarding actual discharge, Mr. Crapo's evidence is reduced to merely the words "FORGIVEN DEBT" listed on a form that Zions Bank sent to satisfy an IRS reporting obligation. Mr. Crapo presents no other evidence that Zions Bank actually discharged his debt. In these circumstances, no reasonable fact finder could conclude that the debt was actually discharged. So we affirm the grant of summary judgment on this ground.

¶ 14 Mr. Crapo's estoppel argument fails on the reasonable reliance prong. We conclude that, because Mr. Crapo received a Form 1099-C that contained, at most, mixed indications of whether his debt was forgiven, he had an obligation to exercise reasonable diligence in investigating whether the loan had actually been forgiven before paying his taxes. The absence of such an inquiry forecloses as a matter of law the conclusion that he investigated with reasonable diligence. The record contains no indication that Mr. Crapo undertook any efforts to satisfy his diligence obligation. His estoppel argument thus fails.

¶ 15 Finally, we award attorney fees to Zions Bank because it was awarded fees below and is the prevailing party on this appeal. We discuss each issue in turn.

---

[8] *Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 15, 355 P.3d 947 (alteration in original) (citation omitted).

## I. The District Court Did Not Err in Concluding There Is No Genuine Dispute of Material Fact Regarding Actual Discharge

¶ 16 Mr. Crapo argues that there is a genuine factual issue regarding whether Zions Bank actually discharged his debt. We hold that, viewing the evidence in the context of the totality of the circumstances, no reasonable fact finder could conclude that Zions Bank actually discharged Mr. Crapo's debt.[9]

¶ 17 Mr. Crapo points us to the following evidence that he asserts is sufficient for the actual discharge question to go to the jury: A) the presence of a Form 1099-C; B) the debt description field of the Form 1099-C where Zions Bank described the debt as "FORGIVEN DEBT"; C) Zions Bank's delay in pursuing this action; and D) Zions Bank's internal Charge Off Request document. We conclude that this evidence is insufficient, when viewed as a whole, to permit a reasonable fact finder to conclude that Zions Bank actually discharged Mr. Crapo's debt. We discuss each piece of evidence in turn.

### A. Mr. Crapo's Receipt of the Form 1099-C

¶ 18 We first assess Mr. Crapo's receipt of the Form 1099-C. Courts have reached differing conclusions regarding whether a debtor's receipt of a Form 1099-C creates a genuine issue of material fact on the issue of actual discharge. Under the minority view, a Form 1099-C is prima facie evidence of actual discharge; the burden then shifts to the lender to show that the Form 1099-C was sent by accident or mistake.[10] The majority view is that a Form 1099-C standing alone does not create an issue of fact as to actual discharge.[11] The district court below expressly adopted the majority view. We decline to adopt either view. Instead we consider a Form

---

[9] Zions Bank argues that Mr. Crapo's actual discharge argument is barred by the statute of frauds. We do not reach this question, because even if we assume that the statute of frauds is no bar, Mr. Crapo has failed to show that a reasonable fact finder could conclude that Zions Bank actually discharged the debt.

[10] *E.g.*, *Amtrust Bank v. Fossett*, 224 P.3d 935, 937 (Ariz. Ct. App. 2009) ("[I]ssuance of the Form 1099–C is prima facie evidence that [a lender] had discharged [a borrower's] debt within the meaning of Arizona law.")

[11] *E.g.*, *FDIC v. Cashion*, 720 F.3d 169, 176–81 (4th Cir. 2013).

1099-C as simply one piece of evidence and view it in the context of the surrounding circumstances.

¶ 19 We find it significant that those courts that have found a Form 1099-C to create a genuine issue of fact have reached that conclusion where there was some "uncertainty" regarding "the creditor's purpose for filing the Form 1099–C."[12] One court explained the issue as follows:

> [B]ecause a creditor can be required to file a Form 1099–C even where a debt has not been cancelled, the mere fact that a Form 1099–C is filed does not constitute sufficient evidence, standing alone, that a debt has been cancelled. Without more, it is impossible for a court to know what the existence of a filed Form 1099–C means. It may mean the debt has been discharged; it may mean the creditor intended to discharge the debt in the future; or it may mean that another of the "identifiable events" in the regulation occurred apart from an actual discharge. Furthermore, it may also have simply been filed by mistake. The bare Form 1099–C alone, which is [the debtor's] sole evidence of debt discharge in this case, does not provide any of the contextual clues needed to decide between these alternatives.[13]

¶ 20 In contrast, here Zions Bank issued a Form 1099-C that included the notation "identifiable event code H" and the event date "12/31/2013," so we are not faced with uncertainty as to the purpose of the Form 1099-C. Instead, the only reasonable conclusion is that the form was sent in response to the expiration of a "non-payment testing period," an event that is unrelated to an actual discharge of debt. Because the stated purpose of the form indicates that it was sent to comply with a reporting requirement not tied to an actual discharge, a fact finder would need to resort to pure speculation or conjecture to reach the conclusion that Zions Bank had discharged the debt. In recognition of this fact, Mr. Crapo relies

---

[12] *In re Estate of Hofer*, 42 N.E.3d 480, 485 (Ill. App. Ct. 2015) ("Either the structure of the Form 1099–C at the time the creditor . . . issued it also did not have a designated area requiring the creditor to name the 'identifiable event' that triggered the filing of the form or the creditor simply failed to list the code.").

[13] *Cashion*, 720 F.3d at 180.

on three additional facts—the debt description field of the Form 1099-C, Zions Bank's period of inaction, and its Charge Off Request. He characterizes these as "contextual clues" that would allow a reasonable fact finder to conclude the debt had actually been discharged. We disagree and find that none of these reasonably leads to such a conclusion.

*B. The Debt Description Field of the Form 1099-C*

¶ 21 Mr. Crapo argues that Zions Bank made an "affirmative statement" describing the Note as "FORGIVEN DEBT" on the Form 1099-C. In fact, Zions Bank used the words "FORGIVEN DEBT AMT 3 YRS NO PAYMENT" in the debt description field of the Form 1099-C. We conclude that this evidence is insufficient to permit a reasonable fact finder to conclude the debt was discharged.

¶ 22 Consistent with the summary judgment standard, we view these words in the context of the form in which they appear, taking all reasonable inferences in favor of the nonmoving party. But there is a difference between a *reasonable* inference and any inference.[14] It strays beyond reasonable for a fact finder to infer, solely from the words "FORGIVEN DEBT" in the debt description field, that Zions Bank actually forgave the debt. The context surrounding this Form 1099-C makes such an inference unreasonable. As discussed above, because Zions Bank indicated event code H, identified the event date as "12/31/2013," and included the words "3 YRS NO PAYMENT" in the debt description, the only reasonable conclusion is that its purpose in sending the form was to report the expiration of the non-payment testing period, not to report an actual discharge of debt.

¶ 23 Apart from the phrase "FORGIVEN DEBT," which appears in what is, at most, an unclear description of the debt, there is no evidence whatsoever of actual discharge. Given this dearth of other evidence, and the fact that the "FORGIVEN DEBT" language appears on a form that was sent to comply with an IRS reporting obligation, we conclude that this evidence would not enable a reasonable fact finder to conclude that Zions Bank actually discharged Mr. Crapo's debt.

---

[14] *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 19, 196 P.3d 588 ("[A] district court is not required to draw every possible inference of fact, no matter how remote or improbable, in favor of the nonmoving party. Instead, it is required to draw all *reasonable* inferences in favor of the nonmoving party.").

### C. Zions Bank's Delay in Enforcement

¶ 24 Mr. Crapo next argues that Zions Bank's delay in enforcing its rights under the Note provides evidence of actual discharge. We disagree. The Note contains a "Delay in Enforcement" clause that provides that Zions Bank "may delay or waive enforcement of any of [its] rights under" the Note "without losing that right or any other right." Given that Mr. Crapo expressly agreed that Zions Bank could delay enforcement of its rights, we conclude that no reasonable fact finder could find its delay to be evidence that it discharged the Note.

### D. Zions Bank's Charge Off Request

¶ 25 Finally, Mr. Crapo argues that the internal Charge Off Request document is evidence that Zions Bank discharged his debt. We reject this argument because the Charge Off Request itself explicitly states that Zions Bank sought to transfer the Note to its "Recovery Department" for an asset search and "further collection efforts." The fact that the bank contemplated further collection efforts dispels any inference that it intended to discharge the debt.[15]

¶ 26 In sum, the only evidence Mr. Crapo can credibly point us to is the phrase "FORGIVEN DEBT AMT 3 YRS NO PAYMENT" on the Form 1099-C. But the circumstances surrounding that form make clear that it was sent for the event code H purpose, not to report an actual forgiveness. In the absence of any other evidence of actual discharge, we conclude that no reasonable fact finder could conclude there has been an actual discharge of debt. We therefore affirm the district court's grant of summary judgment. We turn next to Mr. Crapo's estoppel argument.

---

[15] Zions Bank argues that the Charge Off Request is merely a tax tool that has no bearing on the debtor's liability on the debt, citing *Sell v. MBNA Am. Bank, N.A.*, 2007 UT App 316, 2007 WL 2793249, para. 5 (per curiam) (unpublished opinion) ("The fact that a creditor charges off a debt for tax purposes has no effect on a debtor's liability. If after taking the tax deduction, the creditor subsequently recovers the debt from the debtor, it is simply treated as new taxable income in the year it is collected." (citations omitted)). Mr. Crapo has provided no authority to contradict this assertion. In any event, because the Charge Off Request specifically contemplates further collection efforts, we need not decide this issue here.

## II. The District Court Did Not Err in Concluding There Is No Genuine Dispute of Material Fact Regarding Mr. Crapo's Estoppel Defense

¶ 27 To make out an estoppel defense, a defendant must prove three elements: first, "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"; next, "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act"; and, third, "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act."[16] Estoppel is usually reserved for extreme cases.[17] If there is no genuine dispute of material fact regarding any one of these three elements, a defendant's estoppel defense fails.

¶ 28 The district court concluded that there was no genuine dispute as to any of the three elements. We address Mr. Crapo's arguments regarding the first element, acts inconsistent with a later claim, but we resolve this case based on the second element, reasonable reliance. Even assuming some inconsistency, no reasonable fact finder could conclude that it was reasonable for Mr. Crapo to pay taxes in reliance on the Form 1099-C he received without undertaking at least some measure of diligence to determine what the form meant.[18]

### A. Inconsistent "Statement, Admission, Act, or Failure to Act"

¶ 29 Mr. Crapo argues that Zions Bank took four acts that were inconsistent with the present suit to collect on the debt. He claims that Zions Bank's sending the Form 1099-C, using the phrase "FORGIVEN DEBT" on that form, creating the internal Charge Off Request, and delaying enforcement are all inconsistent with its filing of the present lawsuit. But only one of these—using the phrase "FORGIVEN DEBT" on the Form 1099-C—is even arguably

---

[16] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 14, 158 P.3d 1088 (citation omitted).

[17] *See Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 40, 258 P.3d 539 ("Equitable estoppel is a disfavored remedy. It should be applied rarely, and only when necessary to avoid injustice." (citations omitted)).

[18] Because we conclude that Mr. Crapo's estoppel defense fails on the reasonable reliance element, we need not reach the third element, injury.

inconsistent with a later attempt to collect. We therefore reject each of Mr. Crapo's inconsistency arguments except the "FORGIVEN DEBT" language on the Form 1099-C.

¶ 30 First, the mere sending of a Form 1099-C that specifies identifiable event code H is not inconsistent with a later attempt to collect. On December 31 of any given year, a lender must report an identifiable event code H for each indebtedness on which the borrower has made no payment during the preceding 36 months, regardless of whether there has been an actual discharge. A Form 1099-C that specifies that it was sent to report an event code H therefore says nothing about whether there has been an actual discharge. It is thus completely consistent for a creditor to send a Form 1099-C after the 36 months have elapsed without payment and then proceed to sue the debtor to collect on the debt within the applicable statute of limitations. To hold otherwise would be to effectively shorten the statute of limitations to 36 months.

¶ 31 Second, the internal Charge Off Request document is not inconsistent with this suit because it specifically states that Zions Bank was transferring the Note to its "Recovery Department" for "further collection efforts." More importantly, Mr. Crapo admits that he was not aware of the Charge Off Request when he paid his 2013 taxes, so he cannot have relied on it under the second prong of the estoppel analysis.

¶ 32 Third, Zions Bank's delay in enforcement is not inconsistent with its later attempt to collect, because, as discussed above, the Note contains a Nonwaiver Clause providing that Zions Bank "may delay or waive the enforcement of any of [its] rights under [the Note] without losing that right or any other right." Given that Mr. Crapo expressly agreed that Zions Bank could delay enforcement of its rights without losing them, we see no inconsistency between Zions Bank acquiring a right to sue and later suing on that right within the statute of limitations.

¶ 33 Finally, we recognize that it is a closer question whether the phrase "FORGIVEN DEBT" in box 4 of the Form 1099-C is inconsistent with a later attempt to collect. Zions Bank argues that this language, when viewed in the context of the form, was merely another way of referencing the "non-payment testing period." But we note that there is no requirement in the IRS regulations to describe debt as "forgiven" when it is not. We thus assume, without deciding, that Zions Bank's description of the debt as "FORGIVEN DEBT" is inconsistent with its later attempt to collect on it.

### B. "Reasonable Action or Inaction" Based on the Inconsistency

¶ 34 Zions Bank argues that, even if its description of the debt as "FORGIVEN DEBT AMT 3 YRS NO PAYMENT" is inconsistent with the filing of this suit, no reasonable fact finder could conclude that Mr. Crapo's reliance on that language in paying income tax on the full $250,000 was reasonable.[19] We agree. Mr. Crapo's reliance under these circumstances was unreasonable as a matter of law.

¶ 35 "A party claiming an estoppel cannot rely on representations or acts if they are contrary to his knowledge of the truth or if he had the means by which with reasonable diligence he could ascertain the true situation."[20] That is, for reliance on a representation to be reasonable, the party claiming estoppel must show that he or she put forth some degree of diligence to investigate the accuracy of the representation. Where a representation is unclear or ambiguous, reasonable reliance requires at least some effort to investigate the true meaning.

¶ 36 We hold that no reasonable fact finder could conclude that Mr. Crapo was reasonable in relying on a Form 1099-C that includes, as a debt description, the language "FORGIVEN DEBT AMT 3 YRS NO PAYMENT," without some investigation into the implications of such a form. As an initial matter, the Form 1099-C itself contains ample indication that the mere receipt of the form does not mean that tax is due. To the contrary, the form is replete with language indicating that the form does not specify one way or the other

---

[19] Zions Bank also argues that Mr. Crapo has submitted insufficient admissible evidence of *actual* reliance, let alone *reasonable* reliance, to survive summary judgment. It argues first that, because his affidavit states only that he "follow[ed] the instructions in the 1099-C" in paying his taxes, he has not submitted sufficient evidence that he in fact relied on the words "FORGIVEN DEBT" in the debt description field of that form. Second, Zions Bank argues that Mr. Crapo is required by Utah Rule of Evidence 1002, the "best evidence rule," to include a copy of his tax return in order to prove that he reported and paid taxes on the $250,000 as though it were income. We need not decide this issue because, even assuming there is sufficient evidence of actual reliance, no reasonable fact finder could conclude that such reliance was reasonable under the circumstances.

[20] *Larson v. Wycoff Co.*, 624 P.2d 1151, 1155 (Utah 1981).

whether tax is actually due.[21] For example, the form specifically informs the debtor that "you may not have to include all of the canceled debt in your income."

¶ 37 The best argument Mr. Crapo can make is that he understood the language "FORGIVEN DEBT AMT 3 YRS NO PAYMENT" to be a representation that the debt had been forgiven and that therefore tax was actually due. But even if Mr. Crapo understood the language in this way, such a representation would be contrary to the numerous other indications on the form that a discharge might not have occurred. Viewed in the context of the form as a whole, this language is, at most, ambiguous as to whether the debt was forgiven. In the face of such an ambiguity, it was unreasonable as a matter of law to rely on this language without seeking any outside advice whatsoever. Even assuming the form was ambiguous, a reasonable person would conclude that more information was needed, at the very least a follow-up discussion with the bank. The record contains nothing that would support a reasonable inference that Mr. Crapo took any action to determine the implications of the Form 1099-C he received. Without putting forth any measure of diligence, Mr. Crapo's reliance was unreasonable as a matter of law.

¶ 38 We therefore conclude that, even assuming Zions Bank's description of the debt on the Form 1099-C as "FORGIVEN DEBT" was inconsistent with its later attempt to collect, no reasonable fact finder could conclude that Mr. Crapo reasonably relied on such

---

[21] The form contains several indications that it does not resolve whether an actual discharge has occurred. For example, the form informs the debtor that it was sent because "a lender[] has discharged (canceled or forgiven) a debt you owed, *or* because *an identifiable event has occurred that either is or is deemed to be a discharge* of a debt." (Emphasis added). Hypothetical language pervades the form: "*[i]f a creditor has discharged a debt you owed*, you are required to include the discharged amount in your income"; "*[i]f an identifiable event has occurred but the debt has not actually been discharged*, then include any discharged debt in your income in the year that it is actually discharged"; "[i]f you are required to file a return, a negligence penalty or other sanction may be imposed on you *if taxable income results from this transaction* and the IRS determines that it has not been reported." (Emphases added).

inconsistency in paying his taxes.[22] Summary judgment for Zions Bank was therefore appropriate on his estoppel defense.

### III. Zions Bank Is Entitled to Reasonable Attorney Fees and Costs on Appeal

¶ 39 Zions Bank requests attorney fees under rule 24(a)(9) of the Utah Rules of Appellate Procedure. "[W]hen a party is entitled to attorney fees below and prevails on appeal, that party is 'also entitled to fees reasonably incurred on appeal.'"[23] The district court awarded Zions Bank attorney fees below based on the terms of the Note. Zions Bank, by obtaining affirmance of the district court's ruling in its favor, is the prevailing party on this appeal. It is thus entitled to attorney fees and costs, and we remand this case to the district court for an award of attorney fees, litigation expenses, and court costs reasonably incurred on this appeal.

### Conclusion

¶ 40 Mr. Crapo has failed to show that there is a genuine issue of material fact regarding either actual discharge or estoppel. Although the Form 1099-C contains the words "FORGIVEN DEBT," when those words are read in the context of the entire form, and in the absence of any other credible evidence of discharge, no reasonable fact finder could conclude that the debt was actually forgiven, or that it was reasonable to rely on this language without further inquiry in

---

[22] Mr. Crapo also argues that he reasonably relied on Zions Bank's actions in that he did not maintain his financial affairs in such a way as to be able to repay the Note. But Mr. Crapo provides no legal authority for the proposition that such failure to maintain the funds necessary to pay on a debt constitutes "reliance" justifying an estoppel defense. Nor does he explain this point in any further detail other than simply stating the conclusion. We thus consider this argument inadequately briefed and decline to consider it. *See* UTAH R. APP. P. 24(a)(9); *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, --- P.3d --- ("A party must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case.").

[23] *Dillon v. S. Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 61, 326 P.3d 656 (citation omitted).

paying income tax. We accordingly affirm the district court's grant of summary judgment and remand for the district court to determine the appropriate fee award.

————