**2018 UT App 212**

## THE UTAH COURT OF APPEALS

AL SYME AND MARTHA SYME,
Appellants,
*v.*
SYMPHONY GROUP LLC,
Appellee.

Opinion
No. 20170531-CA
Filed November 8, 2018

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 160901978

Richard H. Reeve, Attorney for Appellants

Robert E. Mansfield and Megan E. Garrett, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1   Al and Martha Syme met with Symphony Group LLC
to discuss the construction of a custom home. The parties signed
a contract, but the Symes cancelled it before construction
began. Symphony, however, retained the Symes' earnest
money and construction deposits. The Symes sued to
recover both deposits, and Symphony moved for summary
judgment, which the district court granted. The Symes appeal.
We affirm in part, reverse in part, and remand for further
proceedings.

## BACKGROUND[1]

¶2 In the spring of 2015, the Symes met with representatives of Symphony about the construction of a new, custom home in Layton, Utah. The parties signed a written contract (the Agreement) on June 1, which set forth the basic details of the house Symphony was to construct, including its location, price, and floor plan. Some of the details, such as the color and type of brick, countertops, and floor coverings, were left to be selected in future meetings. The Agreement also set forth the obligations of each party and provided for specific remedies in the event of a breach.

¶3 As part of the house's purchase price, the Symes agreed to pay Symphony an earnest money deposit of $2,000 (the Earnest Money) and a construction deposit of $43,000 or $48,000 (the Construction Deposit).[2] The Symes delivered the Earnest Money to Symphony when they signed the Agreement. They delivered a $48,000 Construction Deposit to Symphony at a subsequent "Structural Review Meeting."[3]

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

2. The Agreement states that the Construction Deposit was to be $43,000, but in the summary judgment briefing and on appeal both parties refer to a $48,000 Construction Deposit.

3. We note an ambiguity in the Agreement regarding the timing of the Construction Deposit. In one provision, the Agreement required the deposit to be paid at the "Structural Review Meeting." In another provision, the Agreement required the deposit to be paid at the "Color Selection Meeting." The Symes

(continued…)

¶4 Regarding the house's financing, the Agreement required the Symes "to receive written evidence of loan pre-approval within ten (10) days from" Symphony's acceptance of the Agreement, "or such longer period as [Symphony], in its sole discretion may allow." The same provision stated that if the Symes failed "timely to provide such loan approval to [Symphony]," then Symphony could elect to terminate the Agreement. If Symphony elected to terminate the Agreement under this provision, the Agreement required Symphony to return the Earnest Money to the Symes unless they were in default.[4]

¶5 Another provision in the Agreement required the Symes to deliver to Symphony a loan pre-approval letter "prior to or at" the "Color Selection Meeting"—a meeting the Symes were required to attend at Symphony's "reasonable request." If the Symes failed to deliver the loan pre-approval letter as required by this provision, Symphony could, "in its sole and reasonable discretion," deem the Symes "in default" and enforce its remedies "as allowed by [the] Agreement and Utah law, including but not limited to, [Symphony's] retention of [the] Earnest Money and Construction Deposit."

¶6 The Color Selection Meeting never took place. According to the Symes, they "waited in vain" for Symphony to "follow

(…continued)
contend that they provided the Construction Deposit at the Structural Review Meeting only because Symphony told them "it was conditionally required at that point." We need not resolve this ambiguity and express no opinion on the timing of the payment.

4. The Agreement also required the Symes "to pursue [loan] application diligently." If the Symes failed to apply for a loan, a liquidated damages clause allowed Symphony to terminate the Agreement and retain the Earnest Money.

through on [the Color Selection Meeting]" or "request [the pre-approval letter]."

¶7    Before construction started or any other meetings were held, the Symes sent a letter to Symphony through their attorney purporting to cancel the Agreement. The Symes conceded in the letter that they would have to forfeit their $2,000 Earnest Money but requested the return of their Construction Deposit. Because the Symes did not deliver the pre-approval letter and "failed to finalize other preconstruction selections at the Color Selection Meeting," Symphony refused to return the Construction Deposit.

¶8    The Symes brought suit for the return of the Earnest Money and Construction Deposit, seeking a declaration that no contract existed and, alternatively, seeking damages for breach of contract and breach of the implied covenant of good faith and fair dealing. Symphony moved for summary judgment on each claim.

¶9    The district court granted Symphony's motion. It concluded that there was an enforceable contract between the parties and determined that the Symes would be unable to prove their breach of contract claim because the Symes themselves breached the Agreement by failing to provide the pre-approval letter "within 10 days of acceptance of the contract." The court reasoned that "[e]ven if the [Color Selection Meeting] never took place, [the Symes] were still required by the contract to provide the pre-approval letter." The court also concluded that the Symes would be unable to prove their implied covenant of good faith and fair dealing claim. At the heart of that claim was the Symes' contention that the liquidated damages clause Symphony relied on to retain the Earnest Money and Construction Deposit was unconscionable. The court concluded that "expert testimony would be required" to establish unconscionability and that the Symes would be unable to prove

their claim because they had conceded they "would be precluded from offering expert testimony at trial."[5] Thus, the court entered final judgment in favor of Symphony. The Symes timely appeal.

ISSUE AND STANDARD OF REVIEW

¶10   The Symes' arguments on appeal all flow from the district court's summary judgment decision. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "An appellate court reviews a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *ZB, NA v. Crapo*, 2017 UT 12, ¶ 11, 394 P.3d 338 (quotation simplified).

ANALYSIS

I. The Enforceability of the Agreement

¶11   The Symes first contend that the district court erred in granting summary judgment to Symphony on their claim for declaratory relief because there were disputed facts material to the question of whether a contract was formed. In support, they make three related arguments: first, that the Agreement is

---

5. In its summary judgment motion, Symphony sought to exclude the Symes from offering expert testimony because the time to disclose experts had passed under rule 26(a)(4) of the Utah Rules of Civil Procedure. In response, the Symes admitted that the deadlines to designate experts had expired and asserted that expert testimony was unnecessary.

too indefinite to be enforced; second, that the parties never intended the Agreement to be the final agreement; and finally, that the Agreement is ambiguous. We address each argument in turn.

A.      Contract Formation

¶12      The Symes assert that the Agreement is too indefinite to be an enforceable contract because it is "silent as to much of the work that [was] to be performed by Symphony." Without specifying "exterior materials," "interior finishes," and the "types of countertops, cabinets, shingles, lighting fixtures, or appliances" that were to be used in the construction of their house, the Symes assert that the Agreement "cannot be performed."

¶13      "Whether a contract exists between parties is ordinarily a question of law . . . ." *Cea v. Hoffman*, 2012 UT App 101, ¶ 9, 276 P.3d 1178. "A binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced." *ACC Capital Corp. v. Ace West Foam Inc.*, 2018 UT App 36, ¶ 12, 420 P.3d 44 (quotation simplified). "A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 12, 78 P.3d 600 (quotation simplified).

¶14      Here, the Agreement is capable of being enforced because it includes all the essential terms of a valid contract. The Agreement was signed by both the Symes and Symphony, it listed the specific price of the property and the address, and it set forth additional terms regarding the work and the parties' relationship and respective obligations. While some contract terms, such as the color of the countertops and other materials selections, were "left to be agreed upon," *see id.* (quotation

simplified), this fact does not demonstrate that there was no meeting of the minds on the contract's essential terms. Rather, the parties expressly contemplated that additional selections would be made, and they agreed on the process for making those selections.[6] Thus, the Agreement includes sufficient detail as to be "capable of being enforced," and the district court did not err in concluding there was a valid contract. *See ACC Capital*, 2018 UT App 36, ¶ 12 (quotation simplified).

B.      The Parties' Intentions

¶15     The Symes relatedly argue that the Agreement "was not intended, by itself, to be a final contract between the parties" and that the district court failed to recognize the existence of a factual dispute about the parties' intentions. In support, they again highlight that the Agreement contemplated future meetings and they refer to unsigned documents, such as additional exhibits and design addenda that, once completed, would "finalize the contract between the Symes and Symphony." Anticipating these future meetings and documents, the Symes assert that they "did not intend for the [Agreement] to serve as the contract with Symphony and considered themselves as being still engaged in the contract formation process." We are not persuaded.

¶16     The Symes' arguments regarding the parties' intentions largely rehash their argument that the contract was too indefinite to be enforced and needed more details. *See supra* Part I.A. As explained, the parties agreed to the "essential terms" of the Agreement, and the anticipation of future meetings to select

---

6. The Agreement provided default terms for the construction, and the Symes were able to select options and upgrades from among Symphony's offerings, subject to Symphony's approval. The Symes therefore could select from a finite universe of options, but the house would be constructed based on the default terms absent further selections with Symphony's approval.

finishes does not demonstrate that the parties did not intend the Agreement to be enforceable. The Agreement set forth the parties' obligations and their remedies in the event of a breach. That the parties anticipated future activities as set forth in the Agreement does not demonstrate an intent that the obligations they undertook were unenforceable.[7] *See Barker v. Francis*, 741 P.2d 548, 551 (Utah Ct. App. 1987) ("It is not necessary . . . that the contract itself contain all the particulars of the agreement. The crucial factor is that the parties agreed on the essential elements of the contract."); *see also Leopold v. Kimball Hill Homes Fla., Inc.*, 842 So. 2d 133, 136–38 (Fla. Dist. Ct. App. 2003) (determining that a contract for a custom house was enforceable because, while "the buyer [and seller] had the right to make modifications to the plans as construction proceeded," the parties "did in fact have a meeting of the minds as to the essential terms of the contract"); *Augusta Homes, Inc. v. Feuerstein*, No. COA08-1456, 2009 WL 2501399, at *4–6 (N.C. Ct. App. Aug. 18, 2009) (similar). *See generally* Restatement (Second) of Contracts § 34 cmt. a (Am. Law Inst. 1981) ("If the agreement is otherwise sufficiently definite to be a contract, it is not made invalid by the fact that it leaves particulars of performance to be specified by one of the parties.").

C.    Ambiguity

¶17    The Symes contend that the district court erred in granting summary judgment on the Symes' contract formation claim because, they argue, the Agreement is "facially

---

7. The Symes also argue that the district court failed to properly account for the alleged dispute created by Al Syme's declaration that the Symes and Symphony "never fully finalized all components of the [Agreement]." But Al Syme's assertion simply mirrors the arguments made and addressed above, namely, that because certain materials selections remained to be made under the Agreement, the Agreement was incomplete and unenforceable.

ambiguous" and thus "ambiguous as to the intent of the parties."[8] The Symes' argument fails for two reasons.

¶18    First, we disagree that the Agreement is ambiguous in the way the Symes assert. The Symes' ambiguity argument is premised on their contention that the Agreement "contains a facial ambiguity as to the [construction] completion deadline." In one provision, Symphony is allowed "180 days from the commencement of [excavation] on the home" to substantially complete construction. In another provision, the Agreement provides that Symphony "shall make a reasonable effort to have the House substantially complete . . . within eight (8) months after" issuance of a building permit. The Symes assert these provisions create a facial ambiguity as to the completion date for construction and argue that "[t]o resolve the issue of ambiguity of intent, the district court would need to hear and receive factual evidence, which it was precluded from doing in the context of a motion for summary judgment."

¶19    These two provisions do not create ambiguity. "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (quotation

---

8. Symphony contends that the issue of ambiguity is unpreserved. They assert that "[t]he Symes never briefed ambiguity in their opposition to Symphony's [motion for summary judgment]" and therefore failed to preserve the issue. While the Symes' memorandum in opposition to summary judgment was short and did not discuss ambiguity, the Symes' attorney at the hearing did reference the "facial inconsistency within the document itself" and discussed the provisions regarding the two construction deadlines. Therefore, we conclude the issue is preserved and reach the Symes' argument on the merits. *See generally True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶¶ 23–30, 427 P.3d 338.

simplified). "Harmonizing conflicting or apparently ambiguous contract language before concluding that provisions are actually ambiguous is an important step in the hierarchy of rules for contract interpretation." *Gillmor v. Macey*, 2005 UT App 351, ¶ 19, 121 P.3d 57. "To harmonize the provisions of a contract, we examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent." *Id.* (quotation simplified). And harmonizing the two provisions here is simple: Symphony was given 8 months *from the issuance of a building permit* and 180 days (or 6 months) *from excavation* to "substantially complete" the house. The Symes do not explain how these provisions are inconsistent or otherwise ambiguous. It seems to us entirely possible that both deadlines could be honored by securing a building permit and then, within two months, beginning excavation.

¶20    Second, even if we were to discern some facial ambiguity in these two provisions, the Symes do not explain how that ambiguity would undermine the finality of the Agreement in its entirety. Instead, the Symes merely assume that an ambiguity in the terms of the Agreement relating to a construction deadline demonstrates an ambiguity as to the parties' overall intent regarding the finality and enforceability of the Agreement. We fail to see the connection. If there were an ambiguity as to the construction deadline, a court would take extrinsic evidence *as to the deadline*—that is, did the parties mean eight months or six months. *See, e.g.*, *Holladay Bank & Trust v. Gunnison Valley Bank*, 2014 UT App 17, ¶¶ 22–23, 319 P.3d 747 (concluding that a contract was ambiguous "regarding the allocation of collateral proceeds" and remanding to the district court to consider extrinsic evidence "as to the parties' intent *with regard to the distribution of the proceeds*" (emphasis added)). It would not become a basis to deem the entire Agreement unenforceable. Thus, we conclude that the two provisions are not necessarily ambiguous, and even if they were, the ambiguity would not undermine the Agreement's overall enforceability.

¶21    In sum, we conclude that the Agreement is sufficiently clear and capable of being enforced. Accordingly, the district court did not err in granting summary judgment on the Symes' declaratory judgment claim.

## II. The Alleged Breach of Contract

¶22    The Symes next contend that summary judgment on their breach of contract claim was inappropriate because, assuming there was an enforceable contract, a factual dispute existed about whether the Symes breached the Agreement by failing to provide Symphony with the loan pre-approval letter. The Symes argue that the district court disregarded the fact that the Symes "waited in vain" for Symphony and that Symphony "never followed through with or completed the Color Selection Meeting." (Quotation simplified.) Not only did the district court disregard these facts, according to the Symes, but the court "also failed to draw inferences from them" in the Symes' favor. The Symes assert that the district court "could have reasonably inferred that the Symes were not in breach because the [Color Selection Meeting] never occurred and, thus, the time for submittal of the pre-approval letter never arrived." Under this view of the facts, the Symes argue that they were not in breach and could have proven that Symphony breached the Agreement.

¶23    To prove a breach of contract claim, a party must demonstrate its own performance of the contract. *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388 ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."), *abrogated on other grounds as recognized in A.S. v. R.S.*, 2017 UT 77, 416 P.3d 465. "Whether a party performed under a contract or breached a contract is a question of fact." *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 43, 424 P.3d 970. And as stated, at the summary judgment stage we "view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the

nonmoving party." *ZB, NA v. Crapo*, 2017 UT 12, ¶ 11, 394 P.3d 338 (quotation simplified).

¶24   It is undisputed that the Symes did not deliver the pre-approval letter to Symphony. But it is also undisputed that the Color Selection Meeting had not yet occurred. Viewing the facts and the reasonable inferences drawn therefrom in the light most favorable to the Symes, Symphony never followed through with the Color Selection Meeting and never otherwise requested the pre-approval letter. And the district court's conclusion that "[e]ven if the [Color Selection Meeting] never took place, [the Symes] were still required by the [Agreement] to provide the pre-approval letter" is contradicted by the Agreement itself, which provides that the Symes had until the Color Selection Meeting—which never occurred—to deliver the pre-approval letter.

¶25   The district court appears to have conflated the Symes' obligation to *deliver* the pre-approval letter to Symphony at the Color Selection Meeting with their obligation to *receive* written evidence of loan pre-approval within ten days of Symphony's acceptance of the Agreement. The Symes have not disputed that they never applied for a loan, but under the Agreement that failure would amount to a forfeiture of only the Earnest Money. For Symphony to keep the Construction Deposit, as relevant here, the Symes would have to fail to deliver the pre-approval letter by the Color Selection Meeting. And the Symes could not possibly have failed to deliver the pre-approval letter by the Color Selection Meeting because that meeting never occurred, and (according to the Symes) its non-occurrence was Symphony's fault. Thus, viewing the facts in the light most favorable to the Symes, the court erred in determining that the Symes, having not delivered the pre-approval letter, could not prove that Symphony breached the Agreement by retaining the Construction Deposit. Therefore, summary judgment in favor of Symphony on that basis was inappropriate.

¶26    Having rejected the conclusion that the Symes' failure to deliver the pre-approval letter barred their breach of contract action, we turn to Symphony's request to affirm the district court on an alternative basis. Symphony argues that the district court concluded not only that the Symes failed to perform but that they "have not shown that [Symphony] . . . breached the [Agreement]." Because the Symes have not addressed "this second, and conclusive, basis" for the dismissal of their breach of contract claim, Symphony argues that the district court's decision should still be affirmed. But the grounds for this alternative basis are unclear. The district court did not discuss the undisputed facts or the relevant legal authority behind its conclusory statement that the Symes "have not shown that [Symphony] . . . breached the contract." Instead, the statement appears as an aside, meant apparently for emphasis, to its primary conclusion that the Symes breached the Agreement by not delivering the pre-approval letter. Having concluded that the district court's reasoning was erroneous, and "unable to discern" any other "legal or . . . factual basis for the district court's dismissal on this ground," we decline to affirm on this alternative basis and remand for further proceedings. *See Vander Veur v. Groove Entm't Techs.*, 2018 UT App 148, ¶ 37 (quotation simplified), *petition for cert. filed*, Sept. 10, 2018 (No. 20180730).

### III. Good Faith and Fair Dealing

¶27    Finally, the Symes contend that the district court erred in dismissing their claim for breach of the implied covenant of good faith and fair dealing. In their complaint, the Symes asserted that, among other things, the Agreement's liquidated damages clause violates the covenant of good faith and fair dealing because it is unconscionable. In resisting the district court's grant of summary judgment on this claim, the Symes raise two arguments on appeal. First, they argue that "summary judgment was the inappropriate place for the court to even try to address . . . unconscionability." Second, they argue that the district court incorrectly assumed that expert testimony was required to establish unconscionability.

¶28   We conclude the Symes have not carried their burden of persuasion on appeal on these arguments. "It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief." *CORA USA LLC v. Quick Change Artist LLC*, 2017 UT App 66, ¶ 2, 397 P.3d 759 (quotation simplified). To satisfy its burden of persuasion, an appellant must provide "reasoned analysis" on how the district court erred and "may not simply dump the burden of argument and research on the appellate court." *Hi-Country Estates Homeowners Ass'n v. Jesse Rodney Dansie Living Trust*, 2015 UT App 218, ¶ 5, 359 P.3d 655 (quotation simplified).

¶29   On their first argument, the Symes provide no authority for the proposition that the question of unconscionability can never be decided on summary judgment. Instead, they claim that the facts presented and "an analysis of the outcome of [the] Agreement . . . should have been sufficient for the district court to postpone its analysis of substantive unconscionability to a fact finding hearing." While the Symes point generally to documents in the record, they do no more to develop the argument. Without pointing to some authority and developing their argument based on that authority, the Symes cannot meet their burden of persuasion on appeal.

¶30   Similarly, on their second argument, the Symes assert in a single conclusory paragraph that the district court "erred in determining that expert opinion was required." The district court grounded its decision to require expert testimony on the supreme court's opinion in *Commercial Real Estate Investment, LC v. Comcast of Utah II, Inc.*, 2012 UT 49, 285 P.3d 1193. There, the court explained that determining the substantive unconscionability of a liquidated damages clause requires an examination of "the mores and business practices of the time and place" of the contract. *Id.* ¶ 44 (quotation simplified). Because the Symes stipulated that "they would be precluded from offering expert testimony at trial," the district court concluded that without an expert to testify about the relevant "mores and business practices," the Symes would "have no way

of proving that the liquidated damages clause is unconscionable." Other than arguing that "part of the unconscionability analysis could proceed without expert opinion," the Symes make no reasoned analysis of the district court's decision. Therefore, we conclude that the Symes have not carried their burden of persuasion on appeal, and we will not reverse the district court on this basis.

CONCLUSION

¶31 We conclude that the Agreement is a valid and enforceable contract and the district court did not err in granting summary judgment on the Symes' claim for declaratory relief. We also conclude that the Symes have not carried their burden of persuasion on their argument that the court erred in granting summary judgment on their implied covenant of good faith and fair dealing claim. Accordingly, we affirm the district court's decisions with regard to the Symes' claim for declaratory relief and their alternative claim for breach of the implied covenant of good faith and fair dealing. But we agree with the Symes that summary judgment on their breach of contract claim was inappropriate. We therefore reverse the grant of summary judgment on that claim and remand for further proceedings consistent with this opinion.

———————